Poster *v.* Andrews.

(*Knoxville*, September Term, 1943.)

Opinion filed November 20, 1943.

Designated for publication October 3, 1945.*

---

*Certiorari to the decision of the Court of Appeals in this case was denied January 30, 1943, and the opinion of the Court of Appeals was reported in 24 Tenn. App. 86, and 167 S. W. (2d) 1001. Upon petition to rehear the Supreme Court granted **certiorari** and subsequently in this opinion reversed the reported Court of Appeals' decision.

H. C. SMITH and C. FRANK DAVIS, both of Morristown, for plaintiff, petitioner here.

W. J. BARRON, of Morristown, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is an action for breach of promise to marry, seduction being charged in aggravation, in which the jury awarded Miss Andrews fifteen thousand dollars damages. The trial judge required a *remittitur* and the judgment went down for seventy-five hundred dollars. The Court of Appeals sustained a plea of accord and satisfaction and dismissed the suit. This Court granted *certiorari* and has heard argument.

Petitioner here asserts that subsequent to the execution of the accord and satisfaction agreement other and new promises were made and broken and the recovery may

and should be related thereto, that the undisputed proof shows these subsequent, new and independent promises to have been made and violated under aggravating circumstances, and as to this there can be no question. But, the respondent contends that the declaration is not broad enough to support this theory, that it charges but one continuing actionable wrong which was satisfied by the agreement of accord and satisfaction, and this, apparently, is the view of the Court of Appeals.

The facts are not controverted. The defendant did not testify and introduced no witnesses except the attorney who prepared the agreement of accord and satisfaction. It appears that Poster is a well known and financially successful business man operating a poultry business on a large scale. He first met and made advances to Miss Andrews some years before the bringing of this suit in August, 1941. He was a bachelor about thirty years of age. She was some four or five years younger, had not married, and was working for her living. We quote from the opinion of the Court of Appeals this statement of their relationship [167 S. W. (2d) 1001, 1002]:

"Soon after their meeting the defendant began to make love to the plaintiff and shower her with gifts. In due course of time the defendant proposed marriage to the plaintiff and with this in mind persuaded her to live with him as man and wife. They lived together for several years—the defendant continuing promises of marriage. The proposed marriage was always to take place in the near future. When she would ask and insist on marriage it was always put off until tomorrow. These promises of marriage were continued up until a few days before the filing of this suit and even afterward. During this time she was given wedding rings and many other gifts.

"These parties during this time visited her people and his. She was held out to the public, their friends and his business associates as his wife. She signed deeds of trust with him as his wife. This suit was originally instituted in the name of Mrs. M. J. Poster and later amended to show her maiden name. He took her to Asheville, North Carolina, about the time this suit was started telling her they were going there to be married when, as a matter of fact, he placed her in an institution. She was released the following day."

On June 10, 1940, fourteen months before this suit was brought, the parties entered into a contract in writing which is relied on as a defense to this action.

The Court of Appeals thus concisely summarizes this instrument:

"The contract provides: 'In consideration of a full and complete settlement of a breach of marriage contract,' etc., the defendant agrees to pay the plaintiff a certain stipulated sum weekly as long as she remains single with a bonus of $500 upon her marriage. It provides further: 'In event of default on the above stated promise of payment per week, as shown, M. J. Poster agrees that suit for breach of said contract may be instituted in any court of competent jurisdiction, wherever he may be found, or resides, at the time of such breach of contract.'

"The plaintiff agrees to accept this money 'in full accord and satisfaction of her just claims against him for damages incident to his promise of marriage to her, and his failure to comply therewith.'"

The learned writer of this opinion then proceeds to discuss the definitions and principles of accord and satisfaction and comments as follows:

"The parties to this agreement are *sui juris.* The plaintiff agrees to accept this 'in full accord and satisfaction' for damages incident to the promise of marriage. They agree that suit may be brought on this agreement or contract for failure of any of the promised payments. The defendant had prior to this suit defaulted in payments and he had been sued therefor. He was in default at the time of trial of this suit—he could still be sued for this default."

Conceding, but not deciding that the Court of Appeals correctly holds petitioner bound by this agreement, despite the failure and refusal of Poster to perform it according to its terms, we are unable to see how this agreement can be held to relate to and cover the conduct and new promises of respondent since its execution and after its breach by him. Certainly, it cannot be said to have been in the contemplation of the parties that this agreement would be a satisfaction of any future promises of marriage. In the course of her examination petitioner was asked and answered:

"Q. Mrs. Poster, since the agreement was entered into, has Mr. Poster asked you to marry him at any time since the agreement was entered into? A. Yes, sir.

"Q. How many times has he asked you? A. Three times.

"Q. Did you agree to marry him? A. Yes, sir.

"Q. Why wouldn't he get married, why didn't the ceremony ever take place? A. I don't know Mr. Smith."

As she later testified, one of these times was an occasion when Mr. Poster proposed to her to go with him to a resort in Asheville where they would spend two weeks and be married; but that instead he got her into an insane asylum, from which she was released after mental tests and after Mr. and Mrs. Smith were reached and came

and brought her back to Morristown. The proof was thus pointedly directed to events and promises made and broken long subsequent to the execution of the contract of accord and satisfaction.

The Court of Appeals thus disposes of this phase of the case; immediately following the last above quoted paragraph from its opinion, the Court comments:

"The declaration in this suit is based on promises made prior to the execution of the accord and satisfaction agreement thereto. There is no effort or attempt to *confine* this action to alleged promises of marriage made subsequent to the execution of the accord and satisfaction agreement. We, therefore, are not called on to say whether or not suit could be maintained for these subsequent promises. This action is in effect based on a continuing promise of marriage over a period of many years."

We have italicized the word "confine." We do not conceive that this is determinative. If the proof shows, and it clearly does, repeated breaches of promise, both before and after the making of the accord and satisfaction contract, why may not recovery be had for these subsequent breaches, even though right of recovery be cut off as to those breaches before the contract was made? It was not essential that the action or the proof be *confined* to either period or ground of recovery.

But the Court of Appeals says, as above quoted, without analysis, or discussion, that "The declaration in this suit is based on promises made prior to the execution of the accord and satisfaction agrement." This we conceive to present the really determinative question. We have seen that the proof was clearly addressed to and established subsequent breaches. But it is axiomatic that

there must be both pleadings and proof. . We look then to the declaration.

It will be remembered that fourteen months elapsed between the execution of this contract of settlement and the bringing of this suit. Now the declaration, in the opening of paragraph ''6'' contains this specific charge of subsequent, recent breaches: ''Up until the past two or three weeks, the defendant has repeatedly promised the plaintiff that they would be married soon, and the defendant has promised to get an apartment in the City of Knoxville, Tennessee, where they would live after being married,'' etc. (She testifies in detail of this particular promise.)

■ The primary purpose of the requirement of specifications in a declaration is to put the defendant on notice of the matters and things with which he is charged in order that he may be prepared to defend against them. It is provided by Code, Section 8729, that any pleading is sufficient ''when it conveys a reasonable certainty of meaning,'' etc.

Not only does the language above quoted from the declaration give notice of reliance on recent and subsequent breaches, but it will be recalled that this action was not brought until fourteen months after the execution of the contract of accord and satisfaction. In view of the statutory limitation of one year applicable to suits for damages for breach of promise to marry, it is reasonable to assume that a plea of this statute would have been interposed had the defense not understood the declaration to charge a breach or breaches *since the* execution of the contract, not barred by the statute.

Counsel for petitioner calls attention on his brief to a significant admission touching this matter made by counsel for the defendant below in his assignments of

error filed in the Court of Appeals, when, in giving a resume of the pleadings and issues raised thereby, he refers to the allegation that the defendant promised to marry the plaintiff up until two or three weeks before the declaration was filed and thus significantly sums up: "From the foregoing statement of the pleadings it will be seen that the primary issues are: . . . (3) whether there was an actual bona fide promise of marriage *after June 10, 1940*" (italics ours), the date of the contract. Moreover, the defendant interposed two pleas, (1) accord and satisfaction and (2) general issue, the first to meet the admitted breaches before the contract, and the second apparently in denial of those alleged to have occurred thereafter.

The theory that the declaration "is based on promises made prior to the execution of the accord and satisfaction agreement" in June, 1940, seems to have been first suggested by the Court of Appeals and we are unable to concur in this view. Not only do we think the declaration alleged and gave notice of reliance on subsequent breaches, but, as above shown, this specific allegation was distinctly recognized in the assignments filed for the defendant in the Court of Appeals as creating an issue in the case.

Petitioner concedes that her right of action for breaches and mistreatment of her prior to June 10, 1940, was extinguished by her execution of the contract of that date, but insists that this agreement operated as a release only of her right of action as to matters prior thereto, that it did not act prospectively; that it may not be construed to apply to matters not referred to therein, or within the contemplation of the parties. In one of our early cases it was said that, while a release operates upon those matters expressed therein, which exist at the

time of giving the same, it "cannot operate prospectively so as to defeat an action, the cause of which might afterwards arise." *Cocke* v. *Stuart*, 7 Tenn. 137.

We are of opinion that the recovery in this case may properly be related and confined to the actionable misconduct of the defendant below, renewed, continued and repeated after the settlement agreement of June, 1940, for which he offers no denial and no defense. The Court of Appeals concludes its opinion with these words of condemnation:

"The acts of this man have been indeed reprehensible. The judgment of $7,500 would not be out of line in the least if this action could be legally maintained."

Differing with the learned Court of Appeals, we are of opinion, for the reasons stated, that the decree of that court must be reversed and the judgment below affirmed.