Leslie RHEA d/b/a Leslie Rhea's
Landscaping and Grading,
Plaintiff-Appellant,

v.

MARKO CONSTRUCTION COMPANY,
Patterson Construction Company, Marko Planning Co., Inc., and Exchange Mutual Insurance Company, Defendants-Appellees.

Supreme Court of Tennessee,
at Jackson.

May 16, 1983.
Petition to Rehear Denied June 20, 1983.

T.D. Forrester, Covington, for plaintiff-appellant.

John F. Watson, Memphis, for defendants-appellees.

## OPINION

HARBISON, Justice.

This action was brought by a subcontractor on a construction project against the general contractor and the surety on its performance bond. The general contractor, Marko Construction Company, was a partnership, and the other corporate parties, other than the surety, were partners in the firm. In the trial court there were other parties and other issues, including a claim of lien, but these are not involved in the present appeal.

The subcontractor, Leslie Rhea d/b/a Leslie Rhea's Landscaping and Grading, entered into a formal subcontract with Marko Construction Company under date of December 4, 1979. The contract was on a standard A.I.A. form. It called for the subcontractor to furnish concrete curbs, sidewalks, porches, and steps in an apartment project for the elderly. The subcontractor was to be paid $30,000 for this work, progress payments to be made regularly upon the submission of invoices and progress estimates, subject to a retainage of ten percent, the latter to be paid upon completion and acceptance of the project.

The subcontractor, appellant here, commenced work and submitted requests for payment in the amount of $22,000 as construction progressed. The general contractor did not meet these requests, however, and as of June 27, 1980, had paid appellant a total of only $6,450. Appellant was distressed for lack of funds and was unable to pay his labor or suppliers. He purchased materials in the amount of $3,721.50, charging them to the general contractor with the consent of the latter. Because of nonpayment of these accounts, the suppliers filed claims of lien against the project.

As of June 27, 1980, therefore, the general contractor was seriously delinquent in making progress payments to appellant who, as found by the Chancellor, had by that time completed ninety percent of the work called for under the subcontract. Since there was no transcript of the evidence and the record on appeal contains only a narrative summary, it cannot be said that the evidence preponderates against the finding of the Chancellor, despite the fact that there was testimony from the general contractor that the work was only sixty percent complete.

An examination of the status of the parties at that time reveals that the subcontractor would have been justified in treating the contract as rescinded and in suing for the value of his labor and materials in quantum meruit. Failure to make a progress payment under a building contract such as this is ordinarily considered a material breach, and there is no indication that that principle would not be applicable here. The rule is stated as follows:

"The failure to pay an instalment of the contract price as provided in a building or construction contract is a substantial breach of the contract, and gives the contractor the right to consider the contract at an end, to cease work, and to recover the value of the work already performed." 13 Am.Jr.2d *Building and Construction Contracts* § 102 (1964).

This rule has been recognized in a number of cases in this state. In *Ross-Meehan Foundry Co. v. Royer Wheel Co.,* 113 Tenn. 370, 83 S.W. 167 (1904), it was held that where the defendant agreed to pay for metal castings as delivered, failure to make such payments entitled the other party to terminate the contract. *See also Brady v. Oliver,* 125 Tenn. 595, 147 S.W. 1135 (1911), where it was held that upon breach of a building contract by the owner, the contractor was entitled to treat the contract as rescinded and to sue for funds expended in preparation for performance and money actually earned in the course of performance.

In the present case appellant did not seek to rescind. Instead appellant and an official of the general contractor met on June 27, 1980, and entered into a short informal written agreement as follows:

### "CONTRACT

"We, *Richard Patterson* and *Leslie Rhea* have this day entered into a contract for Patterson Construction Co. to finish the concrete work on Meadowview Elderly Apartments at Covington Tennessee. It is also agreed that Marko Construction Co. with whom Patterson Construction Co. is a limited partner, shall pay Mr. Rhea *$10,000* for work that he has done on this project."

There was some question in the Court of Appeals as to whether this document had been properly filed in the record, but there is no disagreement between the parties as to the fact that such a contract was made and as to its terms. The only

dispute between the parties is as to further testimony of appellant Rhea as contained in the narrative statement of evidence. There it is stated that Mr. Rhea testified that a condition of this agreement was that the sum of $10,000 was to be paid to him within one week from the date of its execution. No other witness testified to the contrary, but appellees contend that this testimony violated the parol evidence rule. The record contains no indication that there was any objection made to it, however, so that that question is not properly before us.

It is agreed by the parties that no amount whatever was paid to appellant by appellees, under this contract or otherwise, after June 27, 1980. The record indicates that on August 2, 1980, several weeks after the June 27 agreement, a check for $3,000 was issued to appellant, but this check was returned for insufficient funds. At the time of trial on May 26, 1981, appellees had still made no payments to appellant, and their witnesses were unable to give any explanation for this.

It is the insistence of appellant that the June 27, 1980, agreement was nothing more than an executory accord which was never completed. Appellant contends that he is entitled to proceed on his original claim for labor and materials furnished pursuant to the formal subcontract. The Chancellor so held.

The Court of Appeals, however, concluded that the June 27, 1980, agreement represented a novation or a substituted contract. It accordingly held that appellant's rights were limited by that contract. It reduced the judgment in favor of appellant to $10,000. The Chancellor had awarded $17,634.

Appellees insist that the Court of Appeals was correct in its analysis and that the June 27, 1980, agreement superseded the formal subcontract entered into on December 4, 1979. They point out that either the general contractor or one of its partners relieved appellant of his obligation to complete the work, thereby furnishing new or additional consideration not previously involved. Appellees state that they did in fact complete the work and that appellant is bound by the terms of the subsequent agreement.

Under the authorities cited above, however, it is clear that appellant was not necessarily obligated to continue the work to completion after the original material breach of the payment provisions by appellees. Therefore the promise by appellees to relieve appellant of further performance is not dispositive. There has been no claim that the quality of appellant's work was unsatisfactory or that appellees had to perform extra or corrective work by reason of any breach by appellant.

■ We are unable to agree with the Court of Appeals that the evidence preponderates against the finding of the Chancellor in this case or that appellees have carried the burden of proof resting upon them to establish a substituted contract or a novation. That the burden of proof rests with appellees on this point is clear. *See Dies v. Wilson County Bank,* 129 Tenn. 89, 165 S.W. 248 (1914).

■ Whether a later agreement between contracting parties represents an accord and satisfaction so as to extinguish their original relationship or whether it is simply an executory accord is a matter of the intention of the parties. *Restatement (Second) of Contracts* § 281, comment *e* (1981).

In the case of *Arrowood v. McMinn County,* 173 Tenn. 562, 121 S.W.2d 566 (1938), an accord and satisfaction was found in a new promise made by the defaulting party, and the claimant was not permitted to pursue his original right of action. There two of several tort-feasors had made a settlement of a wrongful death claim with the parents of a deceased child. The parents had accepted a small sum in cash and a promissory note from two of the tort-feasors. The note was not paid, and the plaintiffs contended that they were not bound by the settlement agreement. Rejecting that contention, the Court said:

> "Some insistence is made on the brief for appellant to the effect that because the note executed by the Baldwins has

not been paid, the accord and satisfaction is not complete, but this is not the rule in Tennessee.... And whatever may be the rule elsewhere, it is settled in Tennessee that if the plaintiff accepts a note for a sum to be paid at a future day, such note is satisfaction, and sustains a plea of accord and satisfaction, even though the note is not paid." 173 Tenn. at 569–70, 121 S.W.2d at 569.

There was no note given in the present case nor any evidence that the parties intended anything except a short-term cash settlement, which appellees never paid.

In the case of *Poster v. Andrews,* 182 Tenn. 671, 189 S.W.2d 580 (1943), this Court reversed the judgment of the Court of Appeals and held that an agreement entered into by a plaintiff in settlement of a claim for breach of promise was not an accord and satisfaction and did not preclude her action. Even if the agreement covered all breaches of promise through its date, the Supreme Court held that it did not bar the plaintiff's action for breaches of other promises made thereafter. *See also Helms & Willis v. Unicoi County,* 166 Tenn. 639, 64 S.W.2d 200 (1933); *Lytle v. Clopton,* 149 Tenn. 655, 261 S.W. 664 (1924); *Tullahoma Concrete Pipe Co., Inc. v. Pyramid Concrete Pipe Co.,* 46 Tenn.App. 559, 330 S.W.2d 578 (1959).

In the present case it is difficult for us to conceive that appellant would have accepted a promise of $10,000 in the indefinite future in exchange for an existing obligation found to exceed $17,000. Certainly, in our opinion, appellees have not established that proposition by a preponderance of the evidence. The June 27, 1980, agreement did not, on its face, state that it was an accord and satisfaction or that the original subcontract and all obligations of the parties thereunder were superseded and extinguished by its execution.[1] Rather, we find, as appellant insists, that actual payment of the sum of $10,000, either simultaneously or within a short time after the date of the subsequent agreement, was contemplated. In the absence of that payment, nothing more than an executory accord, without satisfaction or execution, has been established. *See City of Memphis v. Brown,* 87 U.S. 289, 22 L.Ed. 264 (1874). Appellant was subcontractor on a job with a bonded general contractor. While there was some dispute as to the amount owed to him, no reason appears why he would accept an indefinite promise to pay in the future as satisfaction of his claim. Because he was pressed for funds, however, there was every reason for him to settle for an immediate or short-term payment.

Where a new agreement is not itself accepted as actual satisfaction of a prior claim, "failure to make a payment or otherwise perform an act required by a new agreement entered into in satisfaction of a debt or claim leaves such an agreement a mere executory accord, without satisfaction, and as such, it constitutes no bar to the enforcement of the original claim or debt." 1 Am.Jur.2d, *Accord and Satisfaction* § 47 (1962); *see also City of Memphis v. Brown, supra;* Annot. 94 A.L.R.2d 504, 524 (1964); *Restatement (Second) of Contracts,* § 281 (1981).

The judgment of the Court of Appeals is reversed. The judgment of the trial court is reinstated. All costs are taxed to appellees. The cause will be remanded to the trial court for any further proceedings which may be necessary.

FONES, C.J., and COOPER, BROCK and DROWOTA, JJ., concur.

---

1. For example, the subcontract required appellant to guarantee his work and materials for one year after completion. There is no indication that appellees intended to relieve him of that obligation by executing the later agreement.