# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### ASSIGNED ON BRIEFS DECEMBER 9, 2009

## LIBERTY MUTUAL INSURANCE COMPANY v. FRIENDSHIP HOME HEALTH AGENCY, LLC

**Direct Appeal from the Chancery Court for Davidson County**
**No. 06-1701-I     Claudia C. Bonnyman, Chancellor**

_____

**No. M2007-02787-COA-R3-CV - Filed March 19, 2009**

_____

In this appeal, we are asked to determine whether the trial court abused its discretion in denying Appellant's motion for a continuance based on Appellee's failure to provide certain documents until the day before trial and the absence of a witness for Appellant. We are also asked to determine whether the trial court erred in finding that no accord and satisfaction was made when Appellee cashed a check from Appellant for a lesser amount than was owed to Appellee for increased insurance premiums. Finally, we are asked to determine whether the trial court erred in finding that the statute of frauds was not violated although no writing was made when Appellant's insurance policy was re-instated. We find that the trial court did not abuse its discretion in denying Appellant's motion for a continuance, and affirm the trial court's ruling that no accord and satisfaction was made. Because a statute of frauds defense was not properly raised in the trial court, we deem the issue waived.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

John Ben Iwu, Antioch, TN, for Appellant

Frank W. Ziegler, III, Nashville, TN, for Appellee

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Friendship Home Health Agency, Inc. ("Appellant") provides health care services to residents in Tennessee. Liberty Mutual Insurance Company ("Appellee")was assigned, through the assigned risk pool of the State of Tennessee, to provide workers' compensation insurance to Appellant's employees. Appellant filled out an application listing its estimated payrolls. From that information, an estimated premium for coverage was determined, but was subject to audits to ascertain the actual premium for the policy period.

Policy WC2-35S-307667-022 ("Policy 022") was issued with a policy period of October 5, 2002 to October 5, 2003. An interim audit was completed on May 26, 2003. The interim audit revealed the payroll on the policy had been underestimated and that Appellant owed an additional balance of $118,750. When Appellant failed to pay the additional balance, Policy 022 was cancelled, effective July 24, 2003.

On August 15, 2003, Appellant sent Appellee a letter disputing the audit. Under the assigned risk plan guidelines, if a policyholder disputes the audit or additional premium charges, the policyholder may calculate what he believes is the correct premium due, pay that amount, and submit a dispute in writing, specifically stating the reasons for the dispute. If the policyholder does so, the insurance company must suspend collection efforts until the dispute is resolved. After a lapse of coverage, the policy was re-written as policy WC2-35S-307667-033 ("Policy 033") with a policy period of August 15, 2003 to October 5, 2003.

On September 24, 2003, Steve Rice, Appellee's field audit manager, completed an end-of-period audit of Policy 022, and on February 10, 2004, he completed an end-of-period audit of Policy 033. During the audits, Mr. Rice moved some employees Appellant had originally classified as "clerical" into higher classifications. These higher classifications resulted in Appellant owing a total additional balance of $75,079.[1]

According to Theophilus Egbujor, Appellant's chief executive officer and chairman of the board, Appellant sent Appellee a check for $43,699. Mr. Ebujor asserted that "[Appellant] told [Appellee] that this is how much we owed. If they think we owe something different from this or that, they should let us – they should give us the work sheet and show us what we were owing and up to today [November 28, 2007] we haven't heard from them."[2] Mr. Ebujor also claimed that when

---

[1] A balance of $43,263.00 was owed on Policy 022, and $31,816.00 was owed on Policy 033.

[2] At trial, Mr. Egbujor did not specify how Appellant "told [Appellee] that this is how much [they] owed." However, in its brief, Appellant argues that Appellee knew the amount was disputed "based on the letter that was submitted to [Appellee]." Therefore, we presume Appellant's alleged statements were made via the letter.

Appellee cashed the check it was his understanding that, based on the policy, it was the final payment.

However, on July 10, 2006, Appellee filed a Complaint on a Sworn Account in the Davidson County Chancery Court against Appellant, seeking a judgment of $75,079.00. Appellant responded by filing a Sworn Denial on a Sworn Account on August, 11, 2006. An Order to Set for Trial was filed on July 12, 2007, setting trial for November 28, 2007.

At the beginning of the trial on November 28, 2007, Appellant moved for a continuance stating that Appellant's chief witness had just returned from a foreign country a few days prior, and that Appellee had turned over requested documents to Appellant the day before trial. Appellee opposed the continuance, and the trial court overruled Appellant's motion.

At the conclusion of the trial, the trial court entered an Order of Judgment against Appellant in the amount of $75,079.00. In its bench ruling, which was incorporated into its Order of Judgment, the trial court specifically found there was no accord and satisfaction of the debt. It is from this Order of Judgment which Appellant now appeals.[3]

## II. ISSUES PRESENTED

Appellant has timely filed its notice of appeal and presents the following issues for review, summarized as follows:

1. Whether the trial court abused its discretion in failing to grant Appellant's motion for a continuance;
2. Whether the trial court erred in finding there was no accord and satisfaction of the debt; and
3. Whether the trial court erred in holding that the statute of frauds was not violated.

For the following reasons, we affirm the decision of the chancery court.

## III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. **Tenn. R. App. P. 13(d)** (2008); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney*

_____

[3] On April 11, 2008, Appellee filed a Motion to Dismiss Appeal citing Appellant's failure to file a transcript of the trial proceedings. We entered an Order on May 1, 2008, declining to dismiss the appeal and allowing Appellant seven days in which to file the transcript. Appellant filed a copy of the trial transcript on May 5, 2008.

*Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

### A. *Continuance*

On appeal, Appellant asserts that the chancery court abused its discretion when it denied Appellant's motion for a continuance. In support of this argument, Appellant cites two grounds for the continuance. First, Appellant claims that "despite numerous requests," Appellant did not receive a copy of Appellee's audit worksheets until the day before trial. These worksheets, Appellant maintains, identified the names of re-classified employees who, had they been identified earlier, could have testified at trial. Additionally, the worksheets allegedly revealed that Appellant's subcontractor, Theracare, had been added to Appellant's policy because no proof had been provided that Theracare had an insurance policy covering its employees. Appellant claims that this "short notice . . . [left Appellant] unable to gather the evidence needed to show that Theracare was in fact insured." Finally, Appellant contends that a continuance should have been granted because a key witness, a former employee of Appellant who met with Appellee's auditor regarding the classification of employees, was absent from court. According to Appellant, "[u]nbeknownst to defense counsel, this key witness was out of the country and did not come back to the country until a couple of days before trial." Therefore, Appellant was allegedly unable to subpoena the witness to ensure his presence at trial.

"The granting or denial of a motion for a continuance lies in the sound discretion of the court." **Blake v. Plus Mark, Inc.**, 952 S.W.2d 413, 415 (Tenn. 1977) (citing *Moorehead v. State*, 409 S.W.2d 357, 358 (Tenn. 1966)). "The ruling on the motion will not be disturbed unless the record clearly shows abuse of discretion and prejudice to the party seeking a continuance." **Id.** (citing *State v. Strouth*, 620 S.W.2d 467, 472 (Tenn. 1981)); *see also Comm'r of Dep't of Transp. v. Hall*, 635 S.W.2d 110, 111 (Tenn. 1982) ("[I]n order to show an abuse of discretion, the plaintiff must show some prejudice or surprise which arises from the trial court's failure to grant the continuance." (citing *Brady v. State*, 584 S.W.2d 245 (Tenn. Cr. App. 1979))). Under the abuse of discretion standard, we must consider "(1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives." **State ex rel. Moore v. Moore**, No. W2007-01519-COA-R3-JV, 2008 WL 2687672, at *3 (Tenn. Ct. App. July 3, 2008) (citing *State ex rel. Vaughn v. Kaatrude,* 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000)).

In considering a motion for a continuance, trial courts should consider: "(1) the amount of time the proceedings have been pending, (2) the reasons for the continuance, (3) the diligence of the parties seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted." **Burks v. Spurlin**, No. M2006-00122-COA-R3-CV, 2007 WL 1341769, at *2 (Tenn. Ct. App. May 7, 2007) (citing *Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003)).

In denying Appellant's motion for a continuance, the chancellor noted that she "pretty rigidly appl[ies] the case management principles that are set out in the local rules." Rule 27.03 of the Local Rules of Practice for the Circuit, Chancery, Criminal and Probate Courts of Davidson County ("Davidson County Local Rules") states:

> When a case is set by agreement or when a case is set by motion without an objection to having it set, all counsel are certifying they are available for trial and that the case will be in all respects ready for trial on the trial date subject to the provisions of T.R.C.P. 16.

Concerning continuances in chancery and circuit court cases, Davidson County Local Rule 27.05 provides, in relevant part:

> a. Cases may be continued only by leave of the originating court by motion or upon an emergency request or by the judge to whom a case is assigned on the date of trial. They may not be continued by agreement of counsel without consultation of the court. Cases will not be continued except for good cause which shall be brought to the attention of the court as soon as practicable before the date of trial.
>
> b. Absence of a witness will not be cause for a continuance unless the subpoena has been issued and dated ten days prior to a trial for a local witness and 14 days for an out of county witness, pursuant to Local Rule 28.02
>
> c. When a case is set by agreement or set upon motion without an objection to having it set, failure to have completed discovery, inability to take a deposition or failure to have completed any other trial preparation will not be a cause for a continuance.

Based on the foregoing rules, we find that Appellant has failed to show that the trial court abused its discretion in denying the motion for a continuance. Under Davidson County Local Rule 27.05(b), Appellant's inability to secure the attendance of a "key witness" is not cause for a continuance, as the record contains no evidence that Appellant issued a subpoena for such. Likewise, lack of discovery is not cause for a continuance as Appellant entered an agreed Order to Set for Trial, certifying to the court that he would "be in all respects ready for trial on the trial date[,]" and relinquishing "failure to have completed discovery" as grounds for a continuance.

### B.     Accord and Satisfaction

Next, Appellant argues that the trial court erred in finding that Appellee's cashing of the check did not constitute an accord and satisfaction of the balance owed by Appellant to Appellee. Accord and satisfaction is an affirmative defense which must be timely raised.  **See Tenn. R. Civ P. 8.03 (2008)**.  "A party waives all defenses and objections which the party does not present either by motion . . . or . . . in the party's answer or reply, or any amendments thereto[.]" **Tenn. R. Civ. P. 12.08 (2008)**.  While Appellant first raised the affirmative defense of accord and satisfaction at trial, because Appellee "was able to defend[,]" the trial court ruled on the issue, finding no accord and satisfaction had been made.  Therefore, we will address the issue on appeal.  **See Tenn. R. Civ. P. 15.02 (2008)**.

"An accord and satisfaction is a type of contract and is governed by the law of contracts." ***R.J. Betterton Mgmt. Servs., Inc. v. Whittemore***, 733 S.W.2d 880, 882 (Tenn. Ct. App. 1987) (citing *Cole v. Henderson*, 454 S.W.2d 384 (Tenn. 1969)).  Our Supreme Court, in *Lytle v. Clopton*, 261 S.W. 664, 666-67 (Tenn. 1924), stated:

> "An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is or considers himself entitled to; and a satisfaction is the execution of such an agreement."
>
> . . . .
>
> "To constitute a valid accord and satisfaction it is also essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner.  It is equally essential that the creditor shall have accepted it with the intention that it should operate as a satisfaction.  Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction.  The intention of the parties, which is of course controlling, must be determined from all of the circumstances attending the transaction."

(quoting 1 C.J. 523, 529).

The party asserting accord and satisfaction as a defense bears the burden of showing "by a preponderance of the evidence that the parties intended to effect a satisfaction." ***Pinney v. Tarpley***, 686 S.W.2d 574, 578 (Tenn. Ct. App. 1984) (citing *Rhea v. Marko Constr. Co.*, 652 S.W.2d 332 (Tenn. 1983)).  Whether an accord and satisfaction has been made is a question of fact.  ***See Helms v. Weaver***, 770 S.W.2d 552, 554 (Tenn. Ct. App. 1989).

"The rule of accord and satisfaction may apply either to disputed or to undisputed debts." ***Quality Care Nursing Servs., Inc. v. Coleman***, 728 S.W.2d 1, 5 (Tenn. 1987). In all cases of accord and satisfaction, both parties must intend a satisfaction of the obligation; *see Lytle*, 261 S.W. at 666-67, however, it appears that the proof required to show such intention may be less where the debt is disputed. In *Cole v. Henderson*, 454 S.W.2d 374, 376 (Tenn. Ct. App. 1969) the plaintiff and the defendant entered into a written agreement whereby both agreed to a "50-50" split of a real estate commission. The commission for the sale totaled $60,000, but the defendant paid the plaintiff only $15,000 via a check marked "Commission in Full[.]" *Id.* at 376-77. After receiving the check, but before cashing it, the plaintiff confronted the defendant about the money still owed to him. *Id.* at 377. The defendant responded, "I don't owe you anything. I am not going to give you anything more." *Id.* Subsequently, the plaintiff cashed the check. *Id.* at 379. We found the plaintiff's cashing of the check constituted an accord and satisfaction. *Id.* at 384-85; *see also R.J. Betterton Mgmt. Servs. Inc.*, 733 S.W.2d at 882 ("When a debtor *clearly indicates* that a check is offered upon a condition of satisfaction of a debt, the creditor's endorsement and collection on the check generally operate as an accord and satisfaction.") (emphasis added) (citations omitted).

However, in *Quality Care Nursing Servs., Inc. v. Coleman*, 728 S.W.2d 1, 2, 6 (Tenn. 1987), our Supreme Court held that no accord and satisfaction was made where the defendant sent to the plaintiff, and the plaintiff cashed, multiple checks marked "In full to date" or "To date" for the amounts of certain invoices, but less than the total amount owed. The Court distinguished *Cole*, stating that when the creditor has no other knowledge of the dispute, the cashing of a check with restrictive language on its face will not "conclusively establish[] an accord and satisfaction." *Id.* at 4. In those situations, "[s]omething more is required." *Id.*

In the instant case, Mr. Egbujor testified that Appellant sent Appellee a check for $43,699 (the "check") and "told [Appellee] that this is how much we owed. If they think we owe something different from this or that, they should . . . give us the work sheet and show us what we were owing and up to today we haven't heard from [Appellant.]" Mr. Egbujor further testified that he believed the check represented the final payment on the policy and that he had a written agreement signed by Appellant accepting the check as payment in full, but merely did not have it with him at trial. Appellant has made no assertion that the check contained any restrictive language on its face, but contends that "[A]ppellee was well aware that there was a dispute between the parties and that the amount tendered on the check represented full "satisfaction" of the debt based on the letter that was submitted to [Appellee]."

At trial, Mr. Rice, Appellee's field audit manager, acknowledged that Appellant sent Appellee a check for approximately $35,000. He also admitted that Appellee received a letter from Appellant, on or about August 15, 2003, in which Appellant contended that the check constituted the final payment on the policy. He did not, however, testify as to the timing of the letter in relation to the check–whether it was received before the check, simultaneously with the check, or after the check. Mr. Rice further testified that Appellee cashed the check, but he emphasized that "it was not accepted as a full and final payment of the premiums for this policy." In fact, Mr. Rice testified that

he had "[no] records that indicate that any of th[e] payments [made by Appellant] were considered as a satisfaction in full or payment in full of th[e] account[.]"

We must note that neither the check nor the letter have been included in the record before us. Mr. Rice testified that the letter was written or received on August 15, 2003; however, there has been no testimony as to the date the check was written by Appellant or received or cashed by Appellee. As such, we cannot determine whether Appellee was privy to the letter before cashing the check. Appellant has failed to show that Appellee cashed the check with the knowledge that it was being "offered as a satisfaction and extinction of the original demand[,]" *see Lytle*, 261 S.W. at 666; therefore, we find that the evidence does not preponderate against the trial court's finding that there was no accord and satisfaction.

### C.    *Statute of Frauds*

Finally, Appellant contends that the trial court erred in finding that the statute of frauds was not violated despite Appellee's failure to offer proof of a writing signed by Appellant reinstating Appellant's coverage after Policy 022 was cancelled.[4]  Presumably, Appellant argues that because it did not sign any papers to re-instate its coverage via Policy 033, it is not bound by the terms of the contract, and therefore not required to pay the policy's premiums.

Like accord and satisfaction, the statute of frauds is expressly enumerated in Tennessee Rule of Civil Procedure 8.03 as an affirmative defense which must be timely raised.  ***See* Tenn. R. Civ. P. 8.03 (2008)**.  "Recognizing the mandatory nature of Tenn. R. Civ. P. 8.03, the courts have consistently held that affirmative defenses that are not properly raised are waived." ***Brooks v. Davis***, No. 01-A-01-9509-CV00402, 1996 WL 99794, at *7 (Tenn. Ct. App. M.S. Mar. 8, 1996) (Koch, J., concurring) (citing Tenn. R. Civ. P. 12.08; *Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin*, 765 S.W.2d 743, 744 (Tenn. Ct. App. 1987); *Barrton Scientific, Inc. v. Moss*, 542 S.W.2d 375, 379 (Tenn. Ct. App. 1975)); *see also Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 300 ("The failure to assert a claim or defense in a timely manner is deemed a waiver of the right to rely on the claim or defense later in the proceeding.") (citation omitted).

Appellant failed to raise the statute of frauds as an affirmative defense in any pleading before the trial court.  Appellant's only mention of the issue came in its cross-examination of Mr. Rice, wherein Appellant's counsel asked if a writing was made when Policy 022 was re-instated as Policy 033, and then asked Mr. Rice, "Do you know statute of frauds?"  At that time, the trial court instructed Appellant's counsel that "if you have some law in that regard you [sh]ould tell the court at the end of the case[.]"  However, the statute of frauds was not again mentioned during the course of the trial, nor in the trial court's ruling.  Finding that the statute of frauds was not timely raised as an affirmative defense, nor was it tried by consent in the trial court, we deem the issue waived.

---

[4]Although its brief states that the trial court found the statute of frauds was not violated, Appellant's brief also claims that "[t]he trial judge overlooked the statute of frauds issue raised by [Appellant]."

## V. Conclusion

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to Appellant, Friendship Home Health Agency, LLC, and its surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.