# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### MARCH 9, 2010 Session

## JOHN H. KEY, II, and WANDA MORRISON v. CAROLYN LYLE, ET AL.

**Direct Appeal from the Chancery Court for Montgomery County**
**No. MCCHCVREO6-3      Laurence M. McMillan, Jr., Chancellor**

---

### No. M2009-01328-COA-R3-CV - Filed April 13, 2010

---

Appellees, as shareholders, leased a commercial building and property from a relative. When the relative died, the property was left to numerous heirs, including Appellees and the non-shareholder Appellants, and Appellee Carolyn Lyle was named property manager. Appellees fell behind on their rent owed pursuant to the lease, but ultimately repaid the arrearage, and disbursements were made to the property co-owners. Appellants sued, claiming that Lyle should be removed as property manager, that she was obligated to declare the lease in default and to re-let the property, and that the Appellees breached their fiduciary duties to the other property co-owners. The trial court denied Appellants' claims, and we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J. and J. STEVEN STAFFORD, J., joined.

Christopher J. Pittman, Clarksville, Tennessee, for the appellants, John H. Key, II and Wanda Morrison

Robert A. Maness, Clarksville, Tennessee, for the appellees, Carolyn Lyle, et al

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

In 1981, Fannie Bell Langford leased a commercial building and land located at 220 Kraft Street (the "Property") to Langford Welding & Steel Works, Inc. ("LWSW"). Rent was set according to a formula,[1] and was due on the first day of each month. Pursuant to an addendum, the lease was extended through May 31, 2016.

Fannie Bell Langford died in 1999, leaving the Property, subject to the long-term lease, to eighteen heirs. John Key, II, and Wanda Morrison ("Appellants") each own a 5% interest, and Carolyn Lyle, William H. Langford, Thomas M. Langford ("Appellees"), and Katherine Key each own a 10% interest. Appellees, along with Katherine Key, are the four shareholders of LWSW.

Pursuant to a 2001 "Property Management Agreement," Carolyn Lyle was named "managing and collecting Agent" for the Property. Her duties included, among other things, collecting rent from the Property's tenant, LWSW, and semi-annually disbursing the funds to the Property owners. By April 2005, LWSW was more than $35,000.00 in arrears in rent owed. In May 2005, Carolyn Lyle called a meeting of the Property owners, at which twelve of the eighteen Property owners, including both Appellants, were present. Carolyn Lyle claims that she explained to her co-owners that LWSW was "having problems[,]" but that it was entering into "very substantial" new contracts which would help "pull [it] out of the hole that [it was] in." She then proposed that LWSW would "double up or make substantial payments . . . as funds were available" to cure the arrearage. Apparently no vote was taken on the proposal, and it is unclear whether objections to the proposal were voiced during the meeting. Carolyn Lyle did call for a vote on whether she should be retained as property manager. All voting Property owners, representing a majority of the ownership interest, voted for retention.[2]

The back-rent owed by LWSW was paid, and disbursements made to the Property owners, by September 2008, and all checks issued were accepted and cashed. However, while $15,000.00 was still owed, Appellants filed suit seeking the removal of Carolyn Lyle as property manager, claiming that she was obligated to declare the lease in default and re-let

---

[1]The rent owed from 2001-2005 was $1,179.04 per month.

[2]Appellant Key was present but did not vote. Appellant Morrison voted to retain Carolyn Lyle as property manager for one year.

the property,[3] and further alleging that Appellees breached their fiduciary duties owed to the other Property co-owners.[4] The trial court found that LWSW had been in arrears, but that "[t]here was an accord to cure the arrearage and a satisfaction by payment of the accord and acceptance of the payments by the co-owners, thus resulting in a cure of any default on the lease by [LWSW.]" The trial court further found that Carolyn Lyle was not obligated to declare the lease in default pursuant to the lease terms, that a majority of the ownership interest in the Property had voted to retain her as property manager and "there was no proof at trial that would merit setting aside that decision[,]" and that none of the Appellees had breached a fiduciary duty. Appellants timely appealed.

## II. ISSUES PRESENTED

Appellants present the following issues for review, summarized as follows:

1. Whether the trial court erred in finding Carolyn Lyle was not under an obligation to declare the lease in default;

2. Whether the trial court erred in finding that LWSW cured the lease breach;

3. Whether the trial court erred in finding there was no proof that would merit removing Carolyn Lyle as property manager; and

4. Whether the trial court erred in finding that Appellees did not breach their fiduciary duties.

For the following reasons, we affirm the decision of the chancery court.

## III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2009); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact

---

[3]Appellants claim a difference of $223,868.23 between the rent due under the lease, and the fair market rent which could have been earned.

[4]Appellants also filed a claim for partition and sale of the property, which was bifurcated and eventually dismissed.

with greater convincing effect. ***Watson v. Watson***, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). When the trial court makes no specific findings of fact, we review the record to determine where the preponderance of the evidence lies. ***Ganzevoort v. Russell***, 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond*, 521 S.W.2d 806, 808 (Tenn. 1975)). We accord great deference to a trial court's determinations on matters of witness credibility and will not re-evaluate such determinations absent clear and convincing evidence to the contrary. ***Wells v. Tennessee Bd. of Regents***, 9 S.W.3d 779, 783 (Tenn. 1999) (citations omitted). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV.  DISCUSSION

### *A.  Default*

Appellants suggest that Carolyn Lyle, as property manager, had a "duty" to declare the lease in default when LWSW failed to timely remit rent, and they contend that the trial court erred in finding no such obligation pursuant to the lease.

Following the death of the original Lessor, Fannie Bell Langford, the eighteen Property co-owners became the "Lessor" under the lease, which provides:

> Should the Lessee default in the prompt payment of any rental when and as due or in the performance of any other covenant or obligation of the Lessee hereunder, or should the Lessee become bankrupt, insolvent or make any assignment for creditors, Lessor shall have the right *at Lessor option* to treat this lease as thereby terminated, and Lessor *may* re-enter and take possession of the premises without notice or demand or legal process but the Lessee shall, nevertheless, be liable for all loss or damages resulting from such default. Lessor shall have the *right* to re-let the premises as agent of the Lessee to such party as Lessor may deem suitable, and *may* hold Lessee liable for any loss or damages whether suffered in re-letting, or by reason of the property remaining vacant or for any damages done to the premises.

(emphasis added). Based on the unambiguous language of the lease, we affirm the trial court's ruling that the Lessors, and more specifically, Carolyn Lyle as managing agent, had the *option*, rather than the *obligation,* upon non-payment, to terminate the lease, and to retake

and re-let the premises.

### B.    *Accord and Satisfaction*

Next, Appellants argue that the trial court erred in finding that any default by LWSW had been cured. Appellants state that "[t]he trial court held that since a majority of the property owners . . . did not express any opposition to allowing [LWSW] to repay past due rent over a period of time, the default was cured through this 'silent approval[.]'" However, Appellants mischaracterize the trial court's basis for LWSW's cure. As we stated above, the trial court found that "[t]here was an accord to cure the arrearage and a satisfaction by payment of the accord and acceptance of the payments by the co-owners, thus resulting in a cure of any default on the lease by [LWSW.]" Because the evidence does not preponderate against the trial court's finding that an accord and satisfaction of the rental obligation was made, and any default cured, we need not consider Appellants' argument that a majority agreement to avoid the lease terms was inadequate to effect a cure.

"An accord and satisfaction is a type of contract and is governed by the law of contracts." *R.J. Betterton Mgmt. Servs., Inc. v. Whittemore*, 733 S.W.2d 880, 882 (Tenn. Ct. App. 1987) (citing *Cole v. Henderson*, 454 S.W.2d 374, 384 (Tenn. 1969)). Our Supreme Court, in *Lytle v. Clopton*, 261 S.W. 664, 666-67 (Tenn. 1924), stated:

> An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is or considers himself entitled to; and a satisfaction is the execution of such an agreement.

(quoting 1 C.J. 523, 529). Furthermore, the elements of an accord and satisfaction are as follows:

> "To constitute an enforceable accord and satisfaction, it is essential (1) that the tendered consideration be offered to extinguish the original obligation, (2) that the debtor intended the tendered consideration as complete satisfaction for the original obligation, (3) that the debtor's intent be made known to the creditor, and (4) that the creditor accepts the tendered consideration with the understanding that it completely satisfies the original obligation."

*Gibby Gilbert's Driving Range, LLC v. Austin*, No. E2007-01497-COA-R3-CV, 2008 WL 2502131, at *4 (Tenn. Ct. App. June 23, 2008) (citing *Lindsey v. Lindsey*, 930 S.W.2d 553,

556-57 (Tenn. Ct. App. 1996); *Sanders v. Sanders*, No. M1998-00978-COA-CV, 2001 WL 1660715, at *6 (Tenn. Ct. App. M.S. Dec. 28, 2001)).

The party asserting accord and satisfaction as a defense bears the burden of showing "by a preponderance of the evidence that the parties intended to effect a satisfaction." ***Pinney v. Tarpley***, 686 S.W.2d 574, 578 (Tenn. Ct. App. 1984) (citing *Rhea v. Marko Constr. Co.*, 652 S.W.2d 332 (Tenn. 1983)). Whether an accord and satisfaction has been made is a question of fact. ***See Helms v. Weaver***, 770 S.W.2d 552, 554 (Tenn. Ct. App. 1989).

In this case, at some time between the May 2005 meeting and the March 2006 filing of Appellants' complaint, LWSW paid approximately $20,000 of its arrearage owed, and that money was disbursed among the Property owners. Appellants accepted and cashed their disbursement checks. Between March 2006 and the trial in September 2008, LWSW paid the remaining arrearage of approximately $15,000, such that its rental arrearage was satisfied, and appropriate disbursements were made. Again, Appellants accepted and cashed their disbursement checks.

It is clear that Appellees offered and intended the disbursement checks as a complete satisfaction of their current rental obligation. At the May 2005 meeting, at which both Appellants were present, Carolyn Lyle conspicuously proposed that LWSW planned to cure its arrearage by "doubling up" on its rent payments. Thereafter, she tendered checks to Appellants in accordance with the proposal. Based on Appellants' knowledge of LWSW's proposal, we find that Appellants' actions in cashing their respective checks prior to filing suit implied their understanding that the checks were accepted in accordance with the proposal. Moreover, we find that the checks accepted and cashed subsequent to the filing of Appellants' lawsuit evidence a comparable intent. We note that the amount of rent owed has remained uncontested. Appellants' complaint sought only to recover the remaining rent owed, which was ultimately paid, or a finding that the lease should have been declared in default and the property re-let, and damages reflecting an allegedly higher rental rate upon re-letting. We have already determined that Carolyn Lyle had no duty to declare the lease in default; thus, Appellee's only "obligation" was to pay rent. Accordingly, we find that when Appellants accepted and cashed LWSW's rental checks after filing their complaint, they intended that Appellees' *rental* obligation was fulfilled. Because it was ultimately determined that Appellees' rental obligation was their *only* obligation does not prevent Appellants' actions from constituting an accord and satisfaction.

### C. Breach of Fiduciary Duty

Appellants next argue that the Appellees breached a fiduciary duty owed to the co-owners of the Property. Specifically, Appellants contend that the Appellees placed their interest as LWSW shareholders above the interests of the co-owners, and that when Appellees failed to either pay rent or abandon the premises in order that the Property could be re-let, the Appellants suffered damages in that they "did not receive the rent they were entitled to receive when they were entitled to receive it[.]" They also argue that Carolyn Lyle, as property manager, "failed to discharge her duty to protect the property owners from the actions of the tenant, in violation of her fiduciary duty to so act."

Under Tennessee common law, there are two principal types of fiduciary status." ***Foster Bus. Park, LLC v. Winfree***, No. M2006-02340-COA-R3-CV, 2009 WL 113242, at *12 (Tenn. Ct. App. Jan. 15, 2009) (citing Steven W. Feldman, *Tennessee Practice: Contract Law and Practice* § 6.13 , at 504 (2006)). "The first category of common law fiduciary status consists of relationships that are fiduciary *per se* . . . such as between a guardian and ward, an attorney and client, or conservator and incompetent." ***Id.*** (citing *Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn. 1977); *Mitchell v. Smith*, 779 S.W.2d 384, 389 (Tenn. Ct. App. 1989); *Parham v. Walker*, 568 S.W.2d 622, 625 (Tenn. Ct. App. 1978)). A relationship which is not fiduciary *per se* may become a fiduciary relationship where one party has exercised "'dominion and control over another.'" ***Id.*** (quoting *Kelley v. Johns*, 96 S.W.3d 189, 197 (Tenn. Ct. App. 2002)). "This relationship, often called a 'confidential relationship,' 'is not merely a relationship of mutual trust and confidence, but rather it is one 'where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with ability, because of that confidence, to influence and exercise dominion and control over the weaker or dominated party.''" ***Id.*** (quoting *Kelley*, 96 S.W.3d at 197; *Iacometti v. Frassinelli*, 494 S.W.2d 496, 499 (Tenn. Ct. App. 1973)); *see also Roberts v. Chase*, 25 Tenn. App. 636, 166 S.W.2d 641, 650-51 (Tenn. Ct. App. 1942). "Relationships that are not fiduciary *per se* 'require proof of the elements of dominion and control in order to establish the existence of a confidential relationship.'" ***Id.*** (quoting *Kelley*, 96 S.W.3d at 197). "Because confidential relationships can assume a variety of forms, the courts have been hesitant to define precisely what a confidential relationship is and the court must look to the particular facts and circumstances of the case to determine whether one party exercised dominion and control over another, weaker party." ***Id.*** at *13 (citing *Roberts v. Roberts*, 827 S.W.2d 788 (Tenn. Ct. App. 1991)).

Our Supreme Court has quoted with approval the following language regarding co-tenancies:

Tenants in common stand in a confidential relation to each other as to the joint

property, and the same duties are imposed on them as if a joint trust were created by contract between them. In such case, the relation of trust and confidence between them binds all to put forth their best exertions to protect the common interest, and forbids the assumption of a hostile attitude by any of them towards the rest.

**Bullard v. Scott**, No. 03A01-9809-CH-00310, 1999 WL 486818, at *2 (Tenn. Ct. App. July 13, 1999) *perm. app. denied* (Tenn. Dec. 20, 1999) (citing *Headrick v. Carter*, 897 S.W.2d 256, 259-60 (Tenn. 1995) (quoting 8 Tenn. Jur. Cotenancy § 6 (1992))).

The relationship between Carolyn Lyle, as property manager, and Appellants was fiduciary *per se*, and thus Ms. Lyle owed a fiduciary duty to Appellants. Further, the relationship between the Appellants and the Appellees as tenants in common was confidential, and therefore, the Appellees owed a fiduciary duty to Appellants. "'While equity does not deny the possibility of valid transactions between the two parties, yet because every fiduciary relationship implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity, raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption.'" **Cagle v. Hybner**, No.M2006-02073-COA-R3-CV, 2008 WL 2649643, at *7 (Tenn. Ct. App. July 3, 2008) *reh'g denied* (July 31, 2008) (quoting *Roberts*, 166 S.W.2d 650-51). A presumption of invalidity extends to all transactions between the parties to the fiduciary relationship in which the dominant party obtains a benefit from the weaker party. *Id.* (citing *Roberts*, 166 S.W.2d at 651).

Even if we assume that either Carolyn Lyle or the Appellees, as co-owners, derived a benefit at the Appellants' expense, we conclude that Appellees have successfully proven their "compliance with equitable requisites," such that the presumption against invalidity has been overcome. **See Cagle**, 2008 WL 2649643, at *7. As we noted above, Appellees have repaid all arrearages owed under the lease, and the Property co-owners have accepted and cashed their respective disbursements. Appellees point out that no evidence has been presented to show that the Property could have been re-let at all, much less at a higher rate. Additionally, we note that the lease was in place long before the Appellants gained an interest in the Property. The Appellees did not negotiate the lease in an effort to deprive the other co-owners of a profit. Furthermore, Carolyn Lyle testified that during LWSW's period of financial difficulty, she did not accept her property management fee, she not disburse funds to herself as a Property co-owner, and she, along with the other Appellees, abstained from cashing certain checks earned as LWSW employees. Accordingly, we find that the Appellees did not fail to protect Appellants' interests, and we affirm the trial court's finding that no fiduciary duty was breached.

### D. Removal of Property Manager

At the May 2005 Property owners meeting, a majority interest in the Property voted to retain Carolyn Lyle as property manager. Acknowledging this determination, the trial court found that "there was no proof at trial that would merit setting aside that decision[.]" As support for their argument that Carolyn Lyle should have been removed as property manager, Appellants cite the same arguments as those for which they contended she breached her fiduciary duty. For the reasons expressed in the foregoing section, the decision of the trial court is affirmed.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to Appellants, John H. Key and Wanda Morrison, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.