**R.J. BETTERTON MANAGEMENT SERVICES, INC., Plaintiff-Appellant,**

v.

**Charles W. WHITTEMORE, Sr., and Charles W. Whittemore, Jr., d/b/a Nashville Golf and Athletic Club, a Partnership, Defendants-Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

March 6, 1987.

Application for Permission to Appeal
Denied by Supreme Court
June 22, 1987.

Hugh E. Green, Lebanon, for plaintiff-appellant.

Thomas W. Brothers, Nashville, for defendants-appellees.

## OPINION

LEWIS, Judge.

This case arose from a contract dispute between the plaintiff-appellant, R.J. Betterton Management Services, Inc., and the defendants-appellees, Charles W. Whittemore, Sr., and Charles W. Whittemore, Jr. At trial, the Chancellor granted the defendants' Rule 41.02(2) motion for judgment of dismissal, holding that the plaintiff's acceptance of a check from the defendants constituted an accord and satisfaction between the parties. We reverse for reasons stated herein.

The relevant facts are simple. The parties entered an oral contract whereby R.J. Betterton, the owner and president of the plaintiff, was to be the director of a PGA Seniors golf tournament in Nashville in the summer of 1982. Disputes between the parties arose concerning what services the plaintiff was to perform, whether the services the plaintiff did render were satisfactory, and how much the defendants were to pay the plaintiff. On June 19, 1982, Mr. Betterton sent the defendants a bill for $12,387.55 for services rendered and expenses. The defendants disputed the bill and sent the plaintiff a check for $2,014 and a letter, both dated August 5, 1982.[1]

The words "Payment on Nashvill [sic] Golf Senior Classic Tournament through May 1982" appeared on the face of the check in the blank marked "FOR." Mr. Betterton endorsed the check as follows: "Accepted in partial payment on account. For deposit only."

The letter that accompanied the check stated:

5 August 1982

Dear Bob:

On several occassions [sic] I have tried to reach you, and I am going to be out of the office for several days, therefore I am writing you this note and enclosing a check.

At the time that you came into the picture on our tournament, I explained to you that I felt that we were in trouble with marketing, and that Frank Rogers was not doing anything in that direction. Further, that I was not interested in paying some expert from out of town a fee to tell us how to do a tournament, but that I needed someone that could come in roll up their sleves [sic] and sell this tournament. You certainly impressed us in telling us how a tournament should be sold and marketed. You did an outstanding job for us that way. But the fact is that you did not sell the tournament. I know that we were late, that there was a lot of carry over from the old music city tournament, and some

---

1. The record is unclear whether Mr. Whittemore, Sr., or Mr. Whittemore, Jr., sent the letter and the check to Mr. Betterton.

apathy of any tournament— but the truth is that we did not have a fund raising plan. On numerous occassions [*sic*], I mentioned exactly what Sandy Lewis said to us on the second day that he was here "That we are not going to sell the Golf Turnament sitting around the office talking to each other about what a great tournament this is going to be, but we are going to have to get on the streets and sell". I have absolutely no interest in another tournament until someone can convince me that they can raise money and sell the tournament.

I know that this was a dissappointment [*sic*] to you also. But above all I can not ubderstand [*sic*] your billing me for the full fee that you wanted for the tournament. Bob, this is absolutely insulting. I have included in your check the travel expenses for ALL of your trips to and from Nashville, and the amount that you listed for your meals., even though your meals were provided with your room by the Sheraton. I did not include the $343 telephone bill that you listed, since your telephone calls on the Sheraton Bill exceeded $385 to Denver, Syracuse, Phoenix, Palm Springs, Denver, etc.

I wish you every success in Syracuse later this Month.

/s/ Charles W. Whittemore

Charles W. Whittemore

There was no further correspondence between the plaintiff and the defendants until 1984. On July 6, 1984, the plaintiff filed a complaint claiming the balance on the bill sent in June 1982.

The issue before this Court is whether the Chancellor erred in finding the existence of an accord and satisfaction between the parties and dismissing the appellant's complaint.

■ An accord and satisfaction is a type of contract and is governed by the law of contracts. *Cole v. Henderson,* 61 Tenn. App. 390, 413, 454 S.W.2d 374, 384 (1969). In *Lytle v. Clopton,* 149 Tenn. 655, 663–664, 261 S.W. 664, 666–667 (1924), the Tennessee Supreme Court stated:

An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is or considers himself entitled to; and a satisfaction is the execution of such agreement.

. . . .

To constitute a valid accord and satisfaction it is also essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner. It is equally essential that the creditor shall have accepted it with the intention that it should operate as a satisfaction. Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction. The intention of the parties, which is of course controlling, must be determined from all the circumstances attending the transaction.

(quoting 1 C.J. *Accord and Satisfaction* §§ 1 and 16 (1914)). When a debtor clearly indicates that a check is offered upon a condition of satisfaction of a debt, the creditor's endorsement and collection on the check generally operate as an accord and satisfaction. *E.g., Cole v. Henderson,* 61 Tenn.App. 390, 454 S.W.2d 374 (1969), and *Continental Insurance Co. v. Weinstein,* 37 Tenn.App. 596, 267 S.W.2d 521 (1953).

■ The party asserting the affirmative defense of accord and satisfaction has the burden of proving the defense by a preponderance of the evidence. *Rhea v. Marko Construction Co.,* 652 S.W.2d 332, 335 (Tenn.1983) and *Inland Equipment Co. v. Tennessee Foundry & Machine Co.,* 192 Tenn. 548, 552, 241 S.W.2d 564, 565 (1951).

■ In this case, the defendants have failed to show that they indicated to the

plaintiff in an "unmistakable manner" that the check constituted an offer of accord and satisfaction of the disputed matter with acceptance of the check (the offer) conditioned upon satisfaction. No magic language is required on the check and surrounding circumstances, such as a letter accompanying the check and the course of business between the parties, will be considered in determining whether the debtor intends acceptance of the check to be conditioned upon satisfaction of the dispute. *E.g., Moore v. Lowry Fruit Co.,* 2 Tenn. App. 241, 246 (1925). In light of all attendant circumstances, the letter and check sent by the defendants to the plaintiff were ambiguous. Together, the letter and check only communicated, in an unmistakable manner, that the defendants were dissatisfied with the plaintiff's performance and that the check constituted a payment to the plaintiff for his work and expenses on the golf tournament through May 1982. The defendants point out that the plaintiff performed no services for the tournament after May 1982. However, in no manner did the defendants clearly indicate that the check constituted an offer for accord and satisfaction.

■ Further, whether an accord and satisfaction exists depends upon the intention of both parties at the time of the transaction. *Helms & Willis v. Unicoi County,* 166 Tenn. 639, 645–646, 64 S.W.2d 200, 202 (1933), and *Pinney v. Tarpley,* 686 S.W.2d 574, 578 (Tenn.App.1984). Mr. Betterton endorsed the check with the words "accepted as partial payment." Hence, he clearly did not intend his cashing of the check to be in satisfaction of the debt. The limiting language on the back of the check is further evidence of no meeting of the minds, of a lack of intention on the part of both parties to effect an accord and satis-

faction.[2] *Cf. Lytle v. Clopton,* 149 Tenn. at 661–662, 261 S.W. at 666 (no accord and satisfaction in non-check situation where creditor accepts payment by debtor which is accompanied with ambiguous language as to whether payment in satisfaction of debt and creditor immediately notifies the debtor that payment not accepted in satisfaction of debt).

We find that the plaintiff's acceptance of the check did not effect an accord and satisfaction between the parties.

The judgment of the trial court in sustaining the motion to dismiss is reversed with costs assessed against the defendants. The cause is remanded to the trial court for the collection of costs and further necessary proceedings.

CANTRELL and KOCH, JJ., concur.

---

**2.** Because the defendants failed to indicate in an unmistakable manner that the check constituted an offer for satisfaction, what is commonly referred to as a payment-in-full check, the issue of whether a creditor may accept a payment-in-full check and reserve his or her rights through a limited endorsement under Tenn.Code Ann.

§ 47–1–207 is not before this Court. For an excellent discussion of whether UCC § 1–207 affects the common law rule of accord and satisfaction, *see Horn Waterproofing Corp. v. Bushwick Iron & Steel Co.,* 66 N.Y.2d 321, 488 N.E.2d 56, 497 N.Y.S.2d 310 (1985).