IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs February 12, 2003

## HERBERT ARTHUR HEINZE v. PATRICIA CHRISTINE SEVERT (HEINZE)

**Appeal from the Chancery Court for Greene County**
**No. 97000131**
**Thomas R. Frierson, II, Chancellor**

FILED APRIL 10, 2003

**No. E2002-01184-COA-R3-CV**

In this appeal from the Chancery Court for Greene County the Appellant, Herbert Arthur Heinze, contends that the Trial Court erred in finding that a valid accord and satisfaction was entered into between him and the Appellee, Patricia Christine Severt (Heinze), with respect to the distribution of proceeds realized from the sale of the parties' marital residence pursuant to a divorce judgment. We affirm the judgment of the Trial Court and remand for collection of costs and enforcement of the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., JJ., joined.

J. Ronnie Greer, Greeneville, Tennessee, for the Appellant, Herbert Arthur Heinze

David L. Leonard, Greeneville, Tennessee, for the Appellee, Patricia Christine Severt (Heinze)

## OPINION

Mr. and Ms. Heinze were divorced pursuant to an agreed judgment of divorce entered by the Chancery Court of Greene County on March 9, 1998. Among other things, the judgment provides that the parties' residential property shall be sold. The judgment also specifies how the proceeds realized from the sale are to be distributed and, to that end, includes the following language at section six:

6. **Real Estate**. The disposition of the residence property, described in Exhibit "A to this Judgment shall be as follows:

...

      b. When the property is sold, the gross proceeds shall be applied as follows:

...

      vii. $18,000.00 to WIFE representing her agreed upon share in HUSBAND'S retirement account, otherwise, Husband is awarded the IRA at J.C. Bradford and Company representing the proceeds of HUSBAND'S Badger Pattern retirement account.

...

      x. the balance to the parties equally with HUSBAND receiving fifty percent and WIFE receiving fifty percent.

The parties do not dispute that the divorce judgment decrees that the $18,000.00 payment to Ms. Heinze is to be deducted from the gross sale proceeds before the fifty/fifty division of the net proceeds.

In the course of closing the sale of the property in May of 1999 a dispute arose as to the proper means of distributing the $18,0000.00 noted at sub-section (b)(vii)of the divorce judgment. William Nunnally, the attorney handling the closing and counsel for the purchaser, became aware of the fact that a fifty/fifty division of sale proceeds after the $18,000.00 was paid to Ms. Heinze would result in Ms. Heinze, in effect, paying back $9,000.00 of that amount to Mr. Heinze. After discussing this matter with both Mr. and Ms. Heinze, Mr. Nunnally drafted a settlement agreement which provided that the $18,000.00 would be disbursed to Ms. Heinze from Mr. Heinze's net proceeds after the fifty/fifty division. Mr. Heinze concedes that he acquiesced to this manner of distribution and that he approved the settlement agreement which bears his signature.

At or about the same time the parties signed the settlement agreement they also signed a document entitled "Full Mutual Release" and an escrow agreement which provided that approximately $4,000.00 of the proceeds would be held in an escrow account pending resolution of a dispute regarding the payment of certain taxes and credits asserted by Ms. Hienze in connection with the refinancing of an automobile debt. Thereafter, sale of the property was closed.

On September 6, 2001, Mr. Heinze filed a petition in the Greene County Chancery Court in which he asserted that, although the divorce judgment provided that Ms. Heinze was to receive the $18,000.00 from the sales proceeds before the balance was split between the parties, "the closing attorney, based upon the insistence of the Defendant/Wife, deducted the $18,000.00 interest payable to wife pursuant to paragraph 6(B)(viii) of the judgment from the proceeds payable to the Plaintiff/Husband rather than from the proceeds of the sale of the house resulting in an overpayment to Defendant/Wife of $9,000.00 and an underpayment to Plaintiff/Husband in the amount of $9,000.00." The petition further asserts that as a result of this "mistake made by the closing attorney" Mr. Heinze should receive a reimbursement of $9,000.00.

After a non-jury trial of the case on February 11, 2002, the Trial Court entered an order and memorandum opinion in favor of Ms. Heinze upon its determination that "a valid accord and satisfaction was accomplished between the parties with regard to the award of $18,000.00 to [Ms. Heinze]." Thereafter, Mr. Heinze filed notice of appeal.

The single issue addressed by this Court is restated as follows:

Did the Trial Court err in finding that there was accord and satisfaction between the parties with respect to the distribution of the $18,000.00 representing Ms. Heinze share of Mr. Heinze's retirement account?

Our standard of review in a non-jury case is *de novo* upon the record of the proceedings below. There is no presumption of correctness with regards to a trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996). There is, however, a presumption that findings of fact by a trial court are correct and, absent evidence preponderating to the contrary, we must honor that presumption. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87 (Tenn.1993). The question of whether there has been an accord and satisfaction is a question of fact. *Lindsey v. Lindsey*, 930 S.W.2d 553 (Tenn. Ct. App. 1996).

We also note that, as a general rule, this Court does not pass on the credibility of witnesses. A trial court, having seen and heard the witnesses testify, is in the best position to determine the witnesses' credibility. *Bowman v. Bowman*, 836 S.W.2d 563 (Tenn. Ct. App. 1991).

The Trial Court and both parties correctly cite *Lindsey v. Lindsey*, *supra*, for elucidation of the controlling principles of law with respect to accord and satisfaction. In that case we reiterated these principles as follows at pages 556 and 557:

An accord is an agreement whereby:

[O]ne of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is or considers himself entitled to; and a satisfaction is the execution of such agreement.

...

To constitute a valid accord and satisfaction it is also essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner. It is equally essential that the creditor shall have accepted it with the intention that it should operate as a satisfaction .... The intention of the

-3-

parties, which is of course controlling must be determined from all the circumstances attending the transaction.

*R.J. Betterton Mgmt. Serv. v. Whittemore*, 733 S.W2d 880, 882 (Tenn. App. 1987)

We have hitherto recognized the applicability of these rules with respect to accord and satisfaction of a judgment. *Stinnett v. Stinnett*, an unreported opinion of this Court filed in Knoxville on September 7, 2000.

Mr. Heinze contends that the evidence preponderates against the Trial Court's determination that there was an accord and satisfaction in the present case.

First, Mr. Heinze maintains that there is no testimony in the record from which it could be found that there was a meeting of the minds between the parties to the effect that the approval of the settlement would operate as a final resolution of their dispute over the $18,000.00. Mr. Heinze contends that "[t]his is especially true since they were never present together at the closing or during any of the discussions with the closing attorney."

We disagree with Mr. Hienze's assertion that there was no testimony from which the Court could have found that there was a meeting of minds between the parties regarding distribution of the $18,000.00. Mr. Nunnally testified that he had lengthy discussions with both parties with respect to that matter. He further testified that although the parties had not resolved issues regarding the payment of certain taxes and the car debt which necessitated the establishment of the escrow account, he "was under the impression that ... the $18,000.00 issue had been resolved." Mr. Nunnally described Mr. Heinze as "rational" and "calm" during discussions they had about the $18,000.00. And when Mr. Nunnally explained that distributing the $18,000.00 to Ms. Heinze from the proceeds before the equal division of the net proceeds between them would result in her receiving only $9,000.00 from the retirement funds Mr. Heinze "understood." Mr. Nunnally also testified as follows:

> I can tell you that neither party indicated anything to me during our lengthy discussions about another option or attempted to explain why that language would have made more sense than it made to me being cold to it and, and trying to make some sense out of it.

In addition to this testimony of Mr. Nunnally, we note the following testimony of Ms. Heinze when asked if she felt she should have consulted an attorney to modify the divorce judgment after Mr. Heinze agreed to the distribution as proposed by Mr. Nunnally:

> Q. Did you see any need to go to an attorney to ask that this Judgment be modified in light of the fact that he agreed to the distribution?

A. He agreed to it. I didn't see why would I do that. It was an agreed to thing. It was obviously a mistake. He recognized it as such and we agreed to change it, and what we didn't agree to went into escrow.

In the context of Mr. Heinze having signed the settlement agreement, all of these statements from Mr. Nunnally and Ms. Heinze contradict Mr. Hienze's assertion that there was no testimony from which the Court could have found that there was a meeting of minds as to the disbursement of the $18,000.00 from Mr. Heinze's portion of the net proceeds. The fact that the parties were not present at closing at the same time or together when Mr. Nunnally discussed the distribution does not negate the conclusion that they were agreeing to the same thing and that there was a meeting of the minds.

Mr. Heinze next references that portion of the "Full Mutual Release" which was signed by Mr. and Ms. Heinze and which includes the following provision:

> Although mutually releasing the lien of the judgment, by the execution of this release, the parties do not release the other from claims arising from how the proceeds of sale should be distributed between the parties which shall be submitted to the Chancery Court for Greene County, Tennessee even though the liens of the judgment are fully released hereby.

Mr Heinze contends that, by this provision, the parties "expressly reserved a resolution of their dispute for later legal proceedings." However, Ms. Heinze testified that this provision of the release pertained solely to the $4,000.00 held in escrow and that it had nothing to do with the $18,000.00 because Mr. Heinze had agreed to the distribution of the $18,000.00. We do not find that the evidence in this case preponderates against Ms. Heinze's assertions in this regard and Mr. Heinze's contentions to the contrary are without merit.

It is our determination that the Trial Court correctly concluded that an accord and satisfaction was accomplished in this matter.

In addition to the above recognized testimony, we also note the fact that the parties entered into an escrow agreement which acknowledges the parties' disputes regarding distribution of a portion of the sales proceeds related to certain taxes and also regarding credits asserted by Ms. Heinze with respect to an automobile debt. The escrow agreement provides that the $4,313.27 of the proceeds related to these disputes "shall be placed into an escrow account, until such time as the parties have agreed on how same shall be distributed or until such time as a court has declared the rights of the parties in relation to said funds placed into escrow." If Mr. Heinze truly disputed distribution of the $18,000.00 from his net proceeds he could have insisted that that dispute also be subject to the terms of the escrow agreement and that the $18,000.00 be held in the escrow account pending resolution by the Court. The fact that he did not do this persuades us that at the time of closing he did not dispute the distribution of the $18,000.00 as it occurred.

Finally, we note the language of the judgment of divorce at subsection (b) (vii) of section six cited above wherein the $18,000.00 is designated as representing Ms. Heinze's "agreed upon share of [Mr. Heinze's] retirement account." The clear meaning of this language is that the parties had agreed that $18,000.00 of Mr. Heinze's retirement account belongs to Ms. Heinze - $18,000.00, not $9,000.00. Had the distribution at closing resulted in Ms. Heinze's receipt of only $9,000.00 she would have had a claim against Mr. Heinze for the remaining $9,000.00 due her under the divorce judgment.

For the foregoing reasons we affirm the judgment of the Trial Court and remand for enforcement of the judgment and for collection of costs below. Costs of appeal are adjudged against Herbert A. Heinze and his surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE