# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 24, 2016 Session

## JODY PENDERGRASS, ET AL. v. BRANDON INGRAM

**Appeal from the Circuit Court for Bradley County**
**No. V15379  J. Michael Sharp, Judge**
————————————————————

**No. E2015-01990-COA-R3-CV-FILED-JUNE 29, 2016**
————————————————————

This case arises from a contract dispute.  The parties orally contracted for Appellees to perform grading and other work on Appellant's property for the price of $2,500.00.  After Appellees began the work, Appellant requested additional work. The parties did not discuss any additional payment for this work.  After the work was complete, Appellees sent Appellant an invoice for $9,073.00.  Appellant told Appellees he would not pay that amount and sent them a cashier's check marked "pd in full" for $1,500.00, which was the balance due on the original $2,500.00 price.  Appellees marked through the "pd in full" notation on the check, cashed the check, and then notified Appellant that they considered the check to be a credit against the total amount owed.  Appellees later brought suit against Appellant for the disputed amount.  The trial court found that Appellant's check did not constitute an accord and satisfaction and that the parties entered into two separate contracts, one for $2,500.00 and another for additional work above and beyond the original agreement.  We reverse the trial court's judgment and remand with instructions to enter judgment in favor of the Appellee.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Matthew G. Coleman, Cleveland, Tennessee, for the appellant, Brandon Ingram.

Kent T. Jones, Chattanooga, Tennessee, for the appellees, Jody Pendergrass, Denise Pendergrass, and Pendergrass Construction.

## OPINION

# I. Background

Because the Appellant did not file a transcript or statement of the evidence in this case, we recite the facts from the trial court's order. Brandon Ingram ("Appellant") is a former employee of Jody and Denise Pendergrass ("the Pendergrasses"), who own Pendergrass Construction (together with the Pendergrasses, "Appellees"). Mr. Ingram contacted Mr. Pendergrass regarding certain work that he wanted done on his property, including preparing a site for a modular home, clearing a driveway, and clearing an area for a septic tank and field line. The parties entered into a verbal agreement wherein Mr. Ingram agreed to pay Appellees a flat fee of $2,500.00 in exchange for the work.

The work took place over eight, nonconsecutive days in June of 2014. One or two days after Appellees began the work, Mr. Pendergrass requested a partial payment of $1,000.00 from Mr. Ingram, who promptly paid that amount. During the course of the work, Mr. Ingram requested that Appellees perform work beyond what the parties initially discussed. The work that Appellees performed includes "clearing the property, including trees and stumps" over a 3-acre tract, "disposing of the trees and stumps, digging burn pits, moving brush and stumps, burning and burying stumps and brush, building a driveway, site preparation, building a dirt pad for the home, and clearing the area for the septic tanks' field lines." The record does not indicate which of these tasks was initially contracted for and which tasks the parties consider "additional work." Although the parties never discussed any payment for the additional work, the Appellees completed the additional work as Mr. Ingram requested.

After the work was completed, Appellees sent Mr. Ingram an invoice dated June 27, 2014 indicating that the total cost for the work performed was $9,073.00. It is undisputed that Mr. Ingram did not pay this invoice and instead notified Appellees he would not pay any amount over $2,500. The parties attempted settlement discussions, but eventually Mr. Ingram reiterated that he did not intend to pay the invoice amount. Mr. Ingram then sent a cashier's check dated July 7, 2014 for the amount of $1,500.00 to Mr. Pendergrass. The cashier's check contained the notation "pd in full" in the remitter line. Mr. Ingram included a letter with the cashier's check, which contained the statement that the enclosed check was for "services paid in full in the amount of $2,500.00 as agreed between you and myself at the time the job was accepted by you."

Upon receipt of the cashier's check, the Pendergrasses contacted their attorney to assist in the collection of the full invoice amount. Their attorney advised them to cash the check, which they did on July 7, 2014. Before Mrs. Pendergrass cashed the check, she marked through the "pd in full" notation on the check. Appellees' attorney also sent a letter, dated July 8, 2014, to Mr. Ingram, demanding payment of the $8,073.00 balance. The letter stated that "Although the memo line [of the cashier's check] states payment in full, such is disputed and not accepted as such for the work in question." The order also

stated that "We have deposited your payment towards the total amount due."

On December 1, 2014, Appellees filed suit for breach of contract against Appellant in the General Sessions Court for Bradley County. The General Sessions Court found in favor of the Appellees. On May 20, 2015, Appellant filed an appeal to the Circuit Court of Bradley County. The trial court heard the case on June 22, 2015. On July 20, 2015, the trial court entered an order finding that the parties had entered into two separate agreements: the first contract was the original agreement between Appellant and Appellees and "the additional work was an additional and later contract agreement." The trial court also found that "[Appellees] are entitled to be compensated for the additional work that was performed over and above that which was agreed to in the original contract." However, in its order, the trial court also found that the "parties did not reach an agreement as to the payment for the additional work that was done over and above the first original contract." The trial court further stated that "the parties never reached any agreement concerning the additional work requested by Mr. Ingram, completed by Mr. Pendergrass, and accepted by Mr. Ingram." The trial court concluded that although Appellant satisfied his obligations under the first contract by paying the initial $1,000 and then another $1,500 by cashier's check, the cashier's check did not constitute an accord and satisfaction of the second agreement. The trial court awarded Appellees $8,073.00, and Appellant appeals.

## II. Issues

Appellant raises three issues for review:

I. Whether the trial court erred in concluding that there was not an accord and satisfaction.
II. Whether the trial court erred in concluding that there were two separate contracts.
III. Whether the trial court erred in considering settlement offers to determine liability.

## III. Standard of Review

This case was tried without a jury. Accordingly, we review the findings of fact made by the trial court *de novo*, with a presumption of correctness unless the preponderance of the evidence is to the contrary. Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008).

## IV. Analysis

As noted above, the appellate record contains neither a transcript of the evidence nor a Tennessee Rule of Appellate Procedure 24 statement of the evidence. "It is well settled that this Court's review is limited to the appellate record and it is incumbent upon the appellant to provide a record that is adequate for a meaningful review." **Tanner v. Whiteco, L.P.**, 337 S.W.3d 792, 796 (Tenn. Ct. App. 2010). Typically, when the appellant does not include a transcript or statement of the evidence, this Court cannot make a meaningful review of the issues presented. However, this Court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" **Hanson v. J.C. Hobbs Co., Inc.**, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012) (quoting **Simpson v. Fowler**, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012)). Because of the detailed findings of fact made by the trial court and the nature of this case, we conclude that the trial court's decision in this case is readily ascertainable, and, accordingly, we elect to soldier on and review the issues presented.

### A. Accord and Satisfaction

Appellant argues that the trial court erred when it found that the parties did not reach an accord and satisfaction. Specifically, Appellant argues that Appellees' acceptance of the cashier's check marked as "pd in full" constitutes an accord and satisfaction of the entire amount owed. Appellant also argues that the trial court incorrectly applied caselaw in finding that there was not an accord and satisfaction. Appellees contend that because they struck the "pd in full" notation from the check's face and because they only considered the check a partial payment, there was no accord and satisfaction.

"An accord and satisfaction is a type of contract and is governed by the law of contracts." **R.J. Betterton Management Services, Inc. v. Whittemore**, 733 S.W.2d 880, 882 (Tenn. Ct. App. 1987). "Whether there has been an accord and satisfaction is a question of fact …." **Lindsey v. Lindsey**, 930 S.W.2d 553, 557 (Tenn. Ct. App. 1996). "When a debtor clearly indicates that a check is offered upon a condition of satisfaction of a debt, the creditor's endorsement and collection on the check generally operate as an accord and satisfaction." **R.J. Betterton Management Services Inc.**, 733 S.W.2d at 882. Both parties agree that Tennessee Code Annotated Section 47-3-311 defines what constitutes an accord and satisfaction. In pertinent part, the statute provides:

> (a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the

following subsections apply.

(b) […T]he claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

Tenn. Code Ann. § 47-3-311. A claim is not discharged under subsection (b) if "[t]he claimant…proves that within (90) days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted." *Id.* § 47-3-311(c)(2).

It is undisputed that Appellant sent the cashier's check to Appellees as full satisfaction, that the amount owed was subject to a *bona fide* dispute, and that Appellees "obtained payment of" the cashier's check. It is also undisputed that, when tendered to Appellants, the cashier's check was marked "pd in full." The parties do not dispute that this notation satisfies the requirements of subsection (b) that the instrument must contain a "conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." Furthermore, it is undisputed that the Appellees did not return the money from the cashier's check within ninety days of their depositing it. From the record, we conclude that Appellant has met the statutory requirements to affect an accord and satisfaction.

However, Appellees argue that there are additional elements required to prove that the parties affected an accord and satisfaction and that Appellant has not proven all of these elements. Specifically, Appellees argue that Appellant did not show that Appellees had the required intent to affect an accord and satisfaction when Mrs. Pendergrass cashed the cashier's check.

> To constitute a valid accord and satisfaction it is…essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner. It is equally essential that the creditor shall have accepted it with the intention that it should operate as a satisfaction. The intention of the parties, which is of course controlling, must be determined from all the circumstances attending the transaction.

*R.J. Betterton Management Services, Inc.*, 733 S.W.2d at 882 (quoting 1 C.J. *Accord and Satisfaction* §§ 1 and 16 (1914)). "The party asserting accord and satisfaction as a defense bears the burden of showing 'by a preponderance of the evidence that the parties intended to [a]ffect a satisfaction.'" *Liberty Mut. Ins. Co. v. Friendship Home Health Agency, LLC*, No. M2007-02787-COA-R3-CV, 2009 WL 736659 (Tenn. Ct. App. March 19, 2009) (quoting *Pinney v. Tarpley*, 686 S.W.2d 573, 578 (Tenn. Ct. App.

1984)).

Appellees argue that they had no intention of accepting Appellant's payment as an accord and satisfaction for the disputed amount of the work they performed, and that this is evidenced by the fact that they marked through the "pd in full" notation before depositing the cashier's check. Appellees also point out that the trial court found that the Pendergrasses "did not accept the $1,500 payment with the intention that it should operate as a satisfaction of all of the debt that they were owed. The acceptance was not in complete satisfaction of the debt…." The trial court also found, under *Sawners v. M.P. Smith Const. Co. Inc.*, 526 S.W.2d 492 (Tenn. Ct. App. 1975), that "the act of marking through the words 'paid in full' by Mrs. Pendergrass has the effect of removing those words from the face of the check." Relying on *Sawners*, the trial court found that "the subsequent cashing of the check by Mrs. Pendergrass does not amount to an accord and satisfaction of the entire debt owed to [Appellees] by Mr. Ingram."

We first address whether the trial court correctly applied the holding in *Sawners*. In *Sawners*, the defendant construction company sent a check to the plaintiff marked "Acct. in full" for "machine hire, labor and materials furnished in the construction of a golf course…." *Sawners*, 526 S.W.2d at 494. The plaintiff then contacted defendant's agent and informed the agent that the amount of the check did not satisfy the defendant's entire debt. The defendant's agent marked out the words "Acct. in full" from the check and initialed the change. *Id.* at 495. The plaintiff then deposited the check. The *Sawners* Court concluded that "the marking through of the words 'Acct. in full' by [defendant's agent] has the effect of removing those words from the face of the check." *Id.* at 496. Based on the agent's actions, the *Sawners* Court concluded that "the subsequent cashing of the check by the plaintiff does not amount to an accord and satisfaction of the entire debt owing to him by the defendant contractor." *Id.* at 496.

In applying *Sawners* to the instant case, the trial court concluded that Appellees could remove the words "pd in full" from the check and, thereby, receive the check as a credit against the amount owed. *Sawners*, however, differs from the instant case in a crucial way. In *Sawners*, it was an agent of the party *issuing* the check that removed the "paid in full" language from the check's face. *See Id.* at 494. In the instant case, it was the party *receiving* the check who removed the "paid in full" language. Accordingly, the instant case is distinguishable from *Sawners*, and *Sawners* is not dispositive on the issues presented in this case.

Although we determine that *Sawners* is not dispositive in the instant case, we must still address the issue of whether Appellant has shown that Appellees intended an accord and satisfaction by cashing Appellant's check. We acknowledge that the caselaw on this issue often turns on the intent of the parties; however, the caselaw also deals with many

different factual scenarios.[1]  We surmise that the varied outcomes are due to the fact-intensive nature of determining whether parties have affected an accord and satisfaction.

Although the caselaw addresses many factual scenarios, our research reveals only one case with identical facts to the instant case:  *Hussey v. Crass*, 53 S.W. 986 (Tenn. Chanc. App. 1899).  In *Hussey*, the plaintiff contracted with the defendant to perform the "trestlework" on a railroad line.  *Hussey*, 53 S.W. at 986.  The defendant was the general contractor for the company that owned the railroad line.  *Id.* The parties disputed the amount that the defendant owed the plaintiff, and eventually the defendant sent the plaintiff a check marked "in full."  *Id.* at 987.  "On receiving this check so stating on its face that it was in full, the [plaintiff], without consulting the defendant on the subject, erased the words 'in full,' and indorsed the check, and collected it, and thereupon entered a credit upon his account against [the defendant]."  *Hussey*, 53 S.W. at 987-88.  The *Hussey* Court concluded that

> [u]nder such circumstances the receipt by the creditor of an amount purporting to be in full, and tendered as in full, amounts to an accord and satisfaction.  It is immaterial that the complainant erased the words 'in full' from the check.  Of course, if this had been called to [the plaintiff's] attention, and he had assented to it, then the amount paid would only operated as a credit; but, the amount having been tendered as a payment in full, the defendant was bound to receive it that way or not at all.  Having received it, it was a settlement.

*Id.* at 990.

---

[1] Both the fact patterns and outcomes in accord and satisfaction cases vary.  *See generally **Quality Care Nursing Services, Inc. v. Coleman***, 728 S.W.2d 1, 6 (Tenn. 1987) (Check marked "paid in full to date" was not sufficient to affect an accord and satisfaction of a liquidated and undisputed amount); ***R.J. Betterton Management Services, Inc. v. Whittemore***, 733 S.W.2d 880, 883 (Tenn. Ct. App. 1987) ("Mr. Betterton endorsed the check with the words 'accepted as partial payment.'  Hence, he clearly did not intend his cashing of the check to be in satisfaction of the debt.  The limiting language…is…evidence of no meeting of the minds…."); ***Pinney v. Tarpley***, 686 S.W.2d 574, 578 (Tenn. Ct. App. 1984) (Although plaintiff took possession of two deeds offered by defendant as settlement, evidence showed she had no intent to affect an accord and satisfaction because she refused to sign a written release and only held the deeds as "security"); ***Cole v. Henderson***, 454 S.W.2d 374, 414 (Tenn. Ct. App. 1969) (After defendant told plaintiff unequivocally that he would not pay the defendant any more than he already had submitted, plaintiff cashed the defendant's check.  "[T]he inescapable conclusion of this controversy is that the cashing of the check settled the matter…."); ***Liberty Mut. Ins. Co. v. Friendship Home Health Agency, LLC***, No. N2007-02787-COA-R3-CV, 2009 WL 736659, at *6 (Tenn. Ct. App. March 19, 2009) ("Appellant has failed to show that Appellee cashed the check with the knowledge that it was being 'offered as a satisfaction and extinction of the original demand,' *see* [***Lytle v. Clopton***, 261 S.W. 664, 666 (Tenn. 1924)], therefore, we find that the evidence does not preponderate against the trial court's finding that there was no accord and satisfaction.").

We conclude that the reasoning in *Hussey* is applicable to the instant appeal. Like the defendant in *Hussey*, Appellant sent a check to Appellees clearly marked as payment in full. Like the plaintiff in *Hussey*, the Appellees received the check, and, after marking out the "paid in full" language on the check, cashed the check and counted it as a credit. We acknowledge that Appellees notified Appellant that they were not accepting the check as payment in full; however, Appellees sent the notification after they had already deposited the cashier's check. Appellant was not notified of the change before the Appellees cashed the check, and Appellant never assented to the change. As the *Hussey* Court stated, Appellees were "bound to receive [the check] that way or not at all. Having received it, it was a settlement." *Id.* Under *Hussey*, we conclude that the evidence preponderates against the trial court's finding that the parties did not affect an accord and satisfaction.

We further conclude that *Hussey* is determinative even in the face of the intent requirement created by later cases. The defendant in *Hussey* clearly had no intention of accepting the defendant's check as an accord and satisfaction; however, the *Hussey* Court determined that by accepting the check, the defendant affected a settlement. Because of the fact-intensive nature of determining whether parties have affected an accord and satisfaction, we opt for consistency under facts identical to previous caselaw. We conclude that, under the facts here, the Appellees' actions overrides their intent to not receive the cashier's check as an accord and satisfaction. Accordingly, we reverse the trial court's finding that there was no accord and satisfaction between the Appellant and Appellees.

### B. Separate Contracts

Appellant argues that the trial court erred in finding that the parties made two separate contracts. According to Appellant, the parties never entered into a second contract or agreement. Appellees, on the other hand, argue that because there are two separate contracts and the accord and satisfaction only extinguished their claim under the original contract for $2,500.00, they are still owed the judgment amount awarded by the trial court under the second contract.

"The determination of whether a contract has been formed is a question of law." *German v. Ford*, 300 S.W.3d 692, 702 (Tenn. Ct. App. 2009). "It is well established in this jurisdiction that a contract can be expressed, implied, written, or oral…." *Jamestowne on Signal, Inc. v. First Federal Sav. & Loan Ass'n*, 807 S.W.2d 559, 565 (Tenn. Ct. App. 1990). "An oral agreement is enforceable, but the party seeking to enforce it must prove (1) mutual assent to the contract's terms and (2) that the terms are sufficiently definite to be enforceable." *Davidson v. Holtzman*, 47 S.W.3d 445, 453 (Tenn. Ct. App.) (citing *Castelli v. Lien*, 910 S.W.2d 420, 426-27 (Tenn. Ct. App. 1995)). "A contract 'must be of sufficient explicitness so that a court can perceive what are the

respective obligations of the parties.'" ***Doe v. HCA Health Serv. Of Tennessee, Inc.***, 46 S.W.3d 191, 196 (Tenn. 2001) (quoting ***Higgins v. Oil, Chemical and Atomic Workers Intern. Union, Local 3-677***, 811 S.W.2d 875, 880 (Tenn. 1991). "Indefiniteness regarding an essential element of a contract 'may prevent the creation of an enforceable contract.'" ***Id.*** (quoting ***Jamestowne on Signal, Inc.***, 807 S.W.2d at 565).

> If the parties provide a practicable method for determining [the] price or compensation there is no such indefiniteness or uncertainty as will prevent the agreement from being an enforceable contract. The same is true if they agree upon payment of a "reasonable" price or compensation. There are cases, however, in which it is clear that the parties have not expressly or implicitly agreed upon a "reasonable price," and also have not prescribed a practicable method of determination. Where this is true, the agreement is too indefinite and uncertain for enforcement.

***Vatt v. James***, 180 S.W.3d 99, 109 (Tenn. Ct. App. 2005) (quoting 1 Joseph M. Perillo, *Corbin on Contracts*, § 4.3, at 567-68 (Rev ed. 1993)).

In the instant case, the trial court held that there was a separate contract for the work performed by Appellees beyond the scope of the parties' original agreement. However, the trial court's order states that the "parties did not reach an agreement as to the payment for the additional work that was done over and above the first original contract." Furthermore, the invoice presented by Appellees to Appellant did not detail the costs of the work performed in such a way as to differentiate between work under the "original" contract and the additional work performed by Appellees.

The trial court specifically found that the parties never agreed on a price for the additional work, and the record does not contain any evidence regarding what the parties may have mutually considered the price to be for this additional work. Considering this lack of evidence, we conclude that "the parties have not expressly or implicitly agreed upon a reasonable price and also have not prescribed a practicable method of determination." ***Vatt***, 180 S.W.3d at 109 (quoting *Corbin on Contracts*, § 4.3 at 567-68). "Where this is true, the agreement is too indefinite and uncertain for enforcement." ***Id.*** (quoting *Corbin on Contracts*, § 4.3 at 567-68). Accordingly, we reverse the trial court's holding that the parties entered into two separate contracts. Because we reverse the trial court's holding that the parties entered into two contracts, and because we have concluded that the parties did affect an accord and satisfaction, judgment should be entered in favor of the Appellant.

### C. Evidentiary Issues

Because we reverse the trial court's findings that there was no accord and satisfaction between the parties and that the parties formed two separate contracts, we

need not address the Appellants' evidentiary issue. Therefore, we pretermit Appellants' issue regarding the trial court's consideration of settlement offers in determining liability.

## IV. Conclusion

For the foregoing reasons, we reverse the trial court and remand the case for entry of judgment in favor of the Appellant. Costs of this appeal are assessed to the Appellees, Jody Pendergrass, Denise Pendergrass, and Pendergrass Construction, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE