# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### June 22, 2016 Session

## CENTRAL BANK v. JEFF WILKES, ET AL.

**Appeal from the Chancery Court for Hardin County**
**No. CH179   Donald E. Parish, Judge**

_____

**No. W2015-02079-COA-R3-CV – Filed July 21, 2016**

_____


This case arises from a delinquent loan.  Appellee is one of the principals of a development company that obtained a loan in the amount of $250,000 from Appellant bank.  Appellee was allegedly unaware of this loan.  Subsequent to the $250,000 loan, Appellant bank gave the company another loan in the amount of $300,000, which all of the company's principals, including Appellee, personally guaranteed.  The guaranty agreement provided that the principals would personally guarantee all of the company's debts which "may now or at any time hereafter" be owed to the Appellee bank.  Appellee paid the $300,000 loan in full in exchange for Appellant bank releasing a lien on 32 acres of land owned by the development company.  A year later, Appellant bank brought suit against all three principals for the $250,000 loan.  The trial court granted judgment in favor of the Appellee, finding that the Appellee affected an accord and satisfaction with Appellant bank.  Appellant appeals. Affirmed and remanded.

### Tenn. R. App. P. 3; Judgment of the Chancery Court
### Affirmed and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and WILLIAM B. ACREE, SP. J., joined.

Terry Abernathy, Selmer, Tennessee, for the appellant, Central Bank.

Dennis W. Plunk, Savannah, Tennessee, for the appellee, Leon Easley.

# MEMORANDUM OPINION[1]

## I. Background

The basic facts of this case are not in dispute. Jeff Wilkes, Leon Easley, and Fred Tull are the principals of Riverstone Estate Utilities, Inc. ("Riverstone"). On November 10, 2008, Mr. Wilkes obtained a $250,000 loan on Riverstone's behalf from Central Bank ("the bank" or "Appellant"). Mr. Wilkes personally guaranteed this loan, but Messrs. Easley and Tull had no knowledge of the loan.[2] On March 25, 2010, Central Bank gave Riverstone a second loan in the amount of $300,000. Also on March 25, 2010, Mr. Easley ("Appellee"), in his individual capacity, signed a Guaranty Agreement ("the agreement") in favor of Central Bank, wherein he personally guaranteed Riverstone's obligations. The agreement provides that Appellee would guarantee "to [Central Bank] the payment and performance of each and every debt…which [Riverstone] may now or at any time hereafter owe to [Central Bank] (whether such debt…now exists or is hereafter created or incurred….)" The agreement also provides that the guaranty is "an absolute, unconditional, and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the lender…." Riverstone's other principals, Messrs. Wilkes and Easley, also signed individual guarantees in conjunction with the $300,000 loan. These guaranty agreements contained language identical to that set out above.

Sometime in 2012, Central Bank discovered that its president at the time had been engaging in questionable business practices.[3] He left the bank shortly thereafter, and Bob Adkisson became interim president of Central Bank in April of 2012. Because of the former president's activities, regulators from the Federal Deposit Insurance Corporation ("FDIC") began overseeing Central Bank's business. As a result, Mr. Adkisson began efforts to collect on several of the loans the bank's former president had made during his tenure, which

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] It is unclear from the record whether or not Messrs. Easley and Tull were principals of Riverstone when the bank made this loan.

[3] The record does not reveal the exact nature of Central Bank's former president's activities, but they are not relevant to this appeal.

included both of the loans made to Riverstone. In his efforts to collect on the loans, Mr. Adkisson met with Riverstone's principals to discuss payments of the loans. Mr. Adkisson also had one conversation with Mr. Easley's banker, Stephen Gobbell. As a result of the conversation between Mr. Adkisson and Mr. Gobbell, Mr. Easley tendered a check to Central Bank on May 24, 2012 for $321,495.02, reflecting the principal amount of the debt, penalties, and interest on the $300,000 loan. In return for the payment of the loan, Central Bank's board of directors agreed to release a lien it held on 32 acres of land belonging to Riverstone.

On July 30, 2013, Central Bank filed its complaint against Messrs. Easley, Wilkes, and Tull,[4] seeking a judgment for the principal amount of the $250,000 loan plus penalties and interest. Central Bank relied on the language of the guaranty agreement, which was executed in conjunction with the $300,000 loan to affix liability to Riverstone's principals for the $250,000 loan. On October 31, 2013, Mr. Easley filed his answer to the complaint. Therein, Mr. Easley asserted several affirmative defenses, including fraud and accord and satisfaction.

On June 20, 2014, Central Bank filed a motion for summary judgment against Mr. Easley; Mr. Easley opposed the motion. The trial court heard the motion for summary judgment on April 27, 2015. On May 27, 2015, the trial court granted Central Bank's motion for summary judgment in part with respect to Appellee's defense of fraud. The trial court also found, however, that there was a dispute of material fact concerning whether the parties had reached an accord and satisfaction. Accordingly, the trial court denied Appellant's motion for summary judgment regarding that defense.

Following a trial on July 29, 2015, the trial court entered an order dated September 18, 2015. In that order, the trial court found that "the defense of accord and satisfaction…is made out." The trial court credited Messrs. Easley and Gobbell's testimony, finding that their testimony, along with Mr. Adkisson's testimony, supported Appellee's version of events that the parties intended to affect and accord and satisfaction. The trial court noted that

> Mr. Easley made a payment to the bank that he was led to believe via the information that he received from…Mr. Adkisson, which would take him completely out of owing anything to the bank, and in response to that information, he went within hours made that payment, and it also appears that the bank believed that that was true.

The trial court also noted that Central Bank "didn't take any other position [on Mr. Easley's obligations] until it appears sometime down the road when the FDIC became involved and maybe counsel became involved…but the intention of the parties was at the time that [the

---

[4] Mr. Tull has filed a separate appeal in this case. *See* case No. W2015-02399-COA-R3-CV.

$321,495.02] would clear any obligations of Mr. Easley to Central Bank….”

The trial court went on to state that “Central Bank agreed to not just accept the payoff for that note…they agreed to release the mortgage that they held on a Riverstone piece of property….” “The Court looks at that with the understanding that Central Bank of course knew that they were having trouble with this loan.” “Central Bank took the full amount of the note, but they gave something too.” “In other words…had this been just Mr. Easley just coming into the bank just to pay what he owed, there would have been no reason for the Board of Directors to have to meet about that.” “If that was the end of the matter, there would have just been no reason for the bank Board of Directors to have to weigh in and discuss this, and that tends to indicate to the Court that Mr. Easley’s version of the accord and satisfaction theory is accurate here.” On October 16, 2015, Central Bank filed its notice of appeal.

## II. Issues

Appellant presents two issues for our review:

1. Whether the trial court erred when it did not grant Appellant’s motion for summary judgment in full.
2. Whether the trial court erred when it found that Appellee proved that the parties affected an accord and satisfaction.

## III. Standard of Review

The issue of accord and satisfaction was tried without a jury. Accordingly, we review the findings of fact made by the trial court *de novo*, with a presumption of correctness unless the preponderance of the evidence is to the contrary. Tenn. R. App. P. 13(d). The trial court’s conclusions of law, however, are reviewed *de novo* and “are accorded no presumption of correctness.” ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008). “Because the trial judge is in a better position to weigh and evaluate the credibility of the witnesses who testify orally, we give great weight to the trial judge’s findings on issues involving credibility of witnesses.” ***Randolph v. Randolph***, 937 S.W.2d 815, 819 (Tenn. 1996).

## IV. Analysis

### A. Denial of Summary Judgment

Appellant argues that the trial court erred in denying its motion for summary judgment in full, including the issue of accord and satisfaction. Specifically, Appellant argues that the

trial court should have granted its summary judgment motion because Appellee did not set forth specific facts showing a genuine issue of material fact pursuant to Tennessee Rule of Civil Procedure 56. Appellee argues that because the trial court held a hearing on the merits of whether the parties reached an accord and satisfaction, the issue of whether the trial court erred in failing to grant Appellant's motion for summary judgment in full is not reviewable by this Court.

We note that "'[a] trial court's denial of a motion for summary judgment, predicated upon the existence of a genuine issue of material fact, is not reviewable on appeal when a judgment is subsequently rendered after a trial on the merits.'" *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d 521, 526 (Tenn. Ct. App. 2006) (quoting *Bradford v. City of Clarksville*, 885 S.W.2d 78, 80 (Tenn. Ct. App. 1994)). In this case, on the summary judgment motion, the trial court concluded that as to the affirmative defense of accord and satisfaction, "there are material disputed facts and issues that can be resolved only by a trial on the merits…." The trial court subsequently rendered a judgment after a trial on the merits of the factual issue of accord and satisfaction. Accordingly, the issue of whether the trial court erred in not granting Appellant's motion for summary judgment *in toto* is not reviewable on appeal.

## B. Accord and Satisfaction

Appellant also argues that the trial court erred after the bench trial when it found that Appellee had proven the affirmative defense of accord and satisfaction. Specifically, Appellant argues that Appellee did not prove the element of intent required to show an accord and satisfaction. Appellee argues that the evidence shows that the parties did in fact intend to affect an accord and satisfaction as to all of his obligations to Central Bank.

"An accord and satisfaction is a type of contract and is governed by the law of contracts." *R.J. Betterton Management Services, Inc. v. Whittemore*, 733 S.W.2d 880, 882 (Tenn. Ct. App. 1987). "Whether there has been an accord and satisfaction is a question of fact …." *Lindsey v. Lindsey*, 930 S.W.2d 553, 557 (Tenn. Ct. App. 1996). "When a debtor clearly indicates that a check is offered upon a condition of satisfaction of a debt, the creditor's endorsement and collection on the check generally operate as an accord and satisfaction." *R.J. Betterton Management Services Inc.*, 733 S.W.2d at 882. Parties may reach an accord and satisfaction via oral agreement. *See Belcher v. Belcher*, No. E2004-02712-COA-R3-CV, 2005 WL 2333607, at *3, *5 (Tenn. Ct. App. Sept. 23, 2005).

Tennessee Code Annotated Section 47-3-311 defines what constitutes an accord and satisfaction. In pertinent part, the statute provides:

> (a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide

dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.

(b) […T]he claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

Tenn. Code Ann. § 47-3-311. A claim is not discharged under subsection (b) if "[t]he claimant…proves that within (90) days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted." *Id.* § 47-3-311(c)(2).

Appellant's argument focuses on the intent element required to affect an accord and satisfaction.

> To constitute a valid accord and satisfaction it is…essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner. It is equally essential that the creditor shall have accepted it with the intention that it should operate as a satisfaction. The intention of the parties, which is of course controlling, must be determined from all the circumstances attending the transaction.

*R.J. Betterton Management Services, Inc.*, 733 S.W.2d at 882 (quoting 1 C.J. *Accord and Satisfaction* §§ 1 and 16 (1914)). "The party asserting accord and satisfaction as a defense bears the burden of showing 'by a preponderance of the evidence that the parties intended to [a]ffect a satisfaction.'" *Liberty Mut. Ins. Co. v. Friendship Home Health Agency, LLC*, No. M2007-02787-COA-R3-CV, 2009 WL 736659, at *5 (Tenn. Ct. App. March 19, 2009) (quoting *Pinney v. Tarpley*, 686 S.W.2d 573, 578 (Tenn. Ct. App. 1984)).

At trial, Appellee testified that he

> discussed with [Mr. Adkisson] if I was – if I would pay the $320,000…that I would have a – exclude me from any other obligations of Riverstone or Jeff Wilkes and that banker called and verified and then in the meantime, I went to Mr. Adkisson and negotiated if I paid that, I'd be relieved of everything, plus I would get the 30 acres of property so I paid it.

Appellee also testified that he "negotiated with Mr. Adkisson. I told him if I paid that, I would like to have some of the land and he said…they would release [the land] and release

- 6 -

me of all other obligations." Appellee reiterated later in his testimony that his understanding of the transaction was that he "paid the check and got the property and that would release me of all obligations on Riverstone or Jeff Wilkes, and I would have paid my portion of it for it to be released."

Mr. Easley's testimony supports the trial court's finding that he intended to affect an accord and satisfaction, and the bank does not dispute that it was Mr. Easley's intent to clear all of his obligations to the bank. Rather, the bank relies on Mr. Adkisson's testimony to show that Central Bank never intended to affect an accord and satisfaction. Specifically, when asked if Mr. Easley was supposed to be "off the hook on the $250,000 note" if he paid the $300,000 loan, Mr. Adkisson stated "[t]hat was not my intent." The bank argues that Mr. Adkisson's statement is proof that Appellant never intended to affect an accord and satisfaction.

The intent of the parties is determined "from all the circumstances attending the transaction." *R.J. Betterton Management Services, Inc.*, 733 S.W.2d at 882. The trial court found that "both Mr. Gobbell and Mr. Adkisson recalled their conversation being in substance the same, that is, that Mr. Easley was obligated only on one debt to the bank and that was on the $300,000 note." Mr. Gobbell testified that Mr. Adkisson told him that Mr. Easley did not have an obligation to Central Bank other than for the $300,000 loan. Mr. Gobbell also testified that Mr. Adkisson informed him that Mr. Easley was not a guaranty on the $250,000 note. Mr. Adkisson's testimony mirrors Mr. Gobbell's.

The trial court observed that "Central Bank agreed to not just accept the payoff for that note…they agreed to release the mortgage that they held on a Riverstone piece of property…." "The Court looks at that with the understanding that Central Bank of course knew that they were having trouble with this loan." "Central Bank took the full amount of the note, but they gave something too." "In other words…had this been just Mr. Easley just coming into the bank just to pay what he owed, there would have been no reason for the Board of Directors to have to meet about that." "If that was the end of the matter, there would have just been no reason for the bank Board of Directors to have to weigh in and discuss this, and that tends to indicate to the Court that Mr. Easley's version of the accord and satisfaction theory is accurate here." Upon review of the record, the testimony of the witnesses does not preponderate against these findings by the trial court.

While the bank is correct that both parties must intend to affect an accord and satisfaction, "[t]he intention of the parties, which is of course controlling, must be determined *from all the circumstances attending the transaction.*" *R.J. Betterton Management Services, Inc.*, 733 S.W.2d at 882 (quoting 1 C.J. *Accord and Satisfaction* §§ 1 and 16 (1914))(emphasis added). We agree with the trial court's finding that Central Bank would have had no obligation to release its lien on Riverstone's property if Mr. Easley was simply tendering repayment of the $300,000 loan. Mr. Easley has never disputed that he was liable

for the $300,000 loan, and the bank's Board of Directors would not need to hold a meeting regarding a mere payment of an outstanding loan. Instead, the Board of Directors agreed to accept the payment and release 32 acres of Riverstone-owned property it held as collateral to Mr. Easley. These circumstances indicate that the parties reached an agreement that Mr. Easley had fulfilled his obligations to Central Bank, thus affecting an accord and satisfaction.

In viewing all the circumstances surrounding the transaction, we conclude that the evidence does not preponderate against the trial court's finding that the parties reached an accord and satisfaction. Even though Mr. Adkisson stated he did not intend to release Mr. Easley from his obligation on the $250,000 loan, the trial court clearly did not find this statement credible; otherwise, it would have found that the parties did not affect an accord and satisfaction. We afford great weight to the trial court's credibility determinations. *See Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996). Mr. Adkisson's statement, which the trial court implicitly found not to be credible, does not preponderate against the trial court's finding that the parties intended to affect an accord and satisfaction. Because the evidence does not preponderate against the trial court's findings, we affirm.

## V. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are taxed to the Appellant, Central Bank, and its surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE